Diane HILL, Plaintiff–Appellee,

v.

CITY OF NEW YORK; Richard Dixon, individually and as Detective, New York City Housing Authority Police Department; Bruce Clark, individually and as Police Officer with New York City Housing Authority Police Department, Defendants,

Richard Adago, individually and as Assistant District Attorney of New York County; Awilda Rialano, individually and as employee of the Child Abuse Bureau, District Attorney, New York County; Michael Mannion, individually and as supervisor of the Video Unit, District Attorney, New York County; Clayton Frazier, individually and as video technician, District Attorney, New York County, Defendants–Appellants.

No. 1664, Docket 93–9343.

United States Court of Appeals, Second Circuit.

Argued May 24, 1994.

Decided Jan. 17, 1995.

David J. Mudd, Asst. Dist. Atty., New York City (Mark Dwyer, Asst. Dist. Atty., Robert M. Morgenthau, Dist. Atty., of counsel), for defendants-appellants.

Bruce A. Young, New York City, for plaintiff-appellee.

Before: VAN GRAAFEILAND, CARDAMONE and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

The issue in this § 1983 civil rights litigation concerns the precise scope of a local district attorney's immunity from suit. Because a public prosecutor cannot zealously perform the prosecutorial duties of the office if compelled to work under the constant threat of legal reprisals, such official is shielded from liability for civil wrongs by the doctrine of absolute immunity. When this doctrine, necessary to preserve the integrity of the judicial process, shields an alleged egregious and contemptable abuse of official power it is of course very troubling.

■ A district attorney plays more than one role in discharging the duties of the prosecutorial office: sometimes an administrative, sometimes an investigative, and sometimes an advocate's role. When acting as a criminal investigator, a prosecutor is accorded only the qualified immunity ordinarily granted to the police function. Thus, whether a district attorney is or is not entitled to absolute immunity for his or her conduct depends on the function being performed at that time. Here, because what function was being performed "is smother'd in surmise," W. Shakespeare, *Macbeth*, Act I, scene iii (Oxford Press ed. 1928), that aspect of the case must first be resolved in the district court into a final order before we may entertain jurisdiction over it.

This appeal arises out of a civil rights action brought under 42 U.S.C. § 1983 (1988) against an assistant district attorney, a social worker and two videotape technicians employed by the New York County District Attorney's office. Defendants are charged with having engaged in a conspiracy to fabricate false evidence against the plaintiff, Diane Hill. Assistant District Attorney Richard Adago was in charge of investigating the alleged sexual abuse of plaintiff's five-year-old son Joseph.

According to Hill's complaint, the state prosecutor, having obtained only confused and contradictory accounts from the infant victim, determined to manufacture probable cause against the child's mother, plaintiff Hill, by videotaping an interview in which Joseph accused her in a coached and coerced script. Two videotaped interviews were conducted: in the first, Joseph accused his former foster brother, "Little Jesse," of the abuse; in the second interview Joseph implicated his mother. The assistant district at-

torney ignored the substance of the earlier interview, and used the second tape as the basis for ordering plaintiff's arrest and obtaining an indictment against her. Joseph and his brother were removed from their mother's custody and both were placed in foster homes. Unable to raise bail, plaintiff spent seven months in prison awaiting trial. During this period, she gave birth to her third child while shackled to a hospital bed. This infant was also taken from her custody to be placed in foster care. Not until the earlier, exculpatory videotape came to light, was plaintiff finally released.

Defendants moved to dismiss Hill's complaint on the grounds of absolute immunity, and the district court for the Southern District of New York (Sprizzo, J.) denied the motion. This appeal is from that denial. For the reasons given below, we affirm in part, and reverse and dismiss in part, and remand to the district court for further proceedings.

## BACKGROUND

■ Because this is a review of a motion to dismiss, we accept the allegations in the amended complaint as true, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993), bearing in mind that the amended complaint may not be dismissed if plaintiff can prove any set of facts that would entitle her to relief. *See Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). The facts upon which we rely therefore are derived from those allegations of plaintiff's amended complaint that support her § 1983 claim.

### A. *Factual Allegations*

On June 18, 1985 Diane Hill gave birth to Joseph Hill, who shortly after his birth was placed in foster care. Three years later, Hill gave birth to a second son, Matthew McDonald, who resided with plaintiff until the events at issue in this lawsuit took place. Hill repeatedly sought to have Joseph returned to her custody, and beginning in January of 1991, Hill was permitted unsupervised weekend visits with him.

On January 26, 1991 during the third such visit, Hill discovered wood particles in Joseph's feces after he screamed in pain while using the bathroom. Joseph told his mother that "Big Jesse" and "Little Jesse"—two members of the foster home where Joseph had been living until October of 1990—had inserted a piece of wood in his rectum. Plaintiff immediately contacted the foster care agency social workers and made arrangements for Joseph to be taken to Beth Israel Hospital. Officer Bruce Clark of the New York City Housing Police went to Hill's home on the same day, examined the feces and took a sample to the hospital. Unfortunately, instead of being analyzed, the sample was destroyed.

At the hospital the examining doctor found a square piece of wood inside Joseph's rectum. There were no other signs of physical abuse. Joseph told the doctor Big Jesse and Little Jesse put the wood inside him. After consulting with social workers, Officer Clark discharged Joseph into his mother's custody, the determination having been made not to return him to foster care. No report of suspected child abuse was filed.

On January 28, 1991 New York County Assistant District Attorney Adago was assigned to investigate the case. He interviewed Joseph several times at the Manhattan district attorney's office. During the first interview Joseph stated that his former foster mother Dricilla Harris—the mother of Little Jesse—had inserted the wood in his rectum. Joseph had been removed from Harris' home because she physically abused him. Despite this allegation against Harris, Adago filed a report of suspected child abuse against the child's mother, plaintiff Hill, stating that she had used a stick to sexually abuse both Joseph and his younger brother, Matthew McDonald. There was no indication at that time that Matthew had suffered any abuse, nor was any such proof ever produced. The assistant district attorney nonetheless successfully requested that Matthew be removed from plaintiff's custody.

On January 29, 1991 the prosecutor and defendant Awilda Rialano, a social worker for

the New York County District Attorney's Office Child Abuse Bureau, videotaped an interview with Joseph. Defendant Michael Mannion, an employee of the New York County District Attorney's Office, operated the video camera. Plaintiff alleges that Adago and Rialano specifically instructed Joseph to state that plaintiff beat him with a stick and then inserted it in his anus. In response to Adago's question of how the wood got into Joseph's anus, Joseph named his former foster brother, "Little Jesse." Adago immediately ordered that the videotape be stopped, and Mannion complied.[1]

On January 31, 1991 Joseph was interviewed again on videotape. On this occasion, defendant Clayton Frazier, also an employee of the district attorney's office, operated the video camera. Plaintiff complains of a number of failures on the part of appellants to follow the procedures mandated by the grand jury child witness statute, New York CPL § 190.32. Specifically, she charges that Adago misstated the witness' age, failed to certify that the testimony was unsworn, and omitted to record statements on each tape that more than one tape was used to record the examination. See NYCPL § 190.32(5)(b)-(f) (McKinney 1993). Adago did not indicate, as required by § 190.32, that this was a second tape. He encouraged Joseph to state that plaintiff had sexually abused him, and succeeded on this second try in eliciting the testimony that "My mommy gave me a beat-ing when I throwed up" and "She put a stick in my butt."

That night, at the direction of Adago, Officer Dixon placed Hill under arrest. A felony complaint was filed in the New York County Criminal Court charging her with aggravated sexual abuse in the third degree and acting in a manner injurious to a child. Unable to post bail, plaintiff remained incarcerated from January 31, 1991 until September 11, 1991. On February 6, 1991 Adago presented Joseph's second videotape to a grand jury, not revealing that there was another, earlier videotape on which the victim had accused others, not his mother. Plaintiff was indicted in the Supreme Court, New York County, on February 22, 1991.

Further, the assistant district attorney filed two statements with the New York courts to the effect that no exculpatory material existed. Plaintiff ultimately learned of the first videotape when, in response to an order of the court to turn over the videotape that had been presented before the grand jury, Adago accidentally sent plaintiff's counsel the first tape. The indictment against Hill ultimately was dismissed on December 18, 1991.

### B. *Procedural History*

On December 17, 1992 Hill filed the instant civil damages suit pursuant to 42 U.S.C. § 1983 against the City of New York and Adago in the Southern District of New York. Later Hill filed an amended complaint, add-

---

1. As reflected in the following excerpt from the transcript of this interview, Adago reacted abruptly to Joseph's identification of "Little Jesse":

> Rialano: What happened when you went to the hospital? Remember you told me what happened when they took you? Why did they take you to the hospital? What happened?
> Joseph: Cause, cause sticks came out of my butt.
> Adago: Sticks came out of your butt?
> Rialano: Hmmm.
> Adago: O.K. Can you tell us where the sticks came out of your butt?
> Joseph: From right here. (Points)
> Adago: From your, from your heinie. Can you tell us how the sticks got there. How'd they get there?
> Joseph: From Big Jesse's son.
> Rialano: From who?
> Joseph: Big Jesse's son.
> Rialano: Who put the sticks in your butt? You told me earlier.
> Joseph: Little Jesse.
> Rialano: Who's Jesse?
> Joseph: Um, that's the ?
> Adago: ... We're going to cut this videotape, uh, 4:35 P.M. And we'll just continue it after ... Right? O.K. Ah, ladies and gentlemen, it's now 4:55 P.M., January 29, 1991. We decided to discontinue the videotaping of Joseph Hill for today because of the late hour of the day and the fact that the child was only four and a half years old. He seems to be somewhat tired. He has gotten somewhat unruly and somewhat uncooperative in terms of talking any longer on the videotape. So for those reasons we decided to discontinue the videotape today, hopefully to continue it at a later point in time. Thank you.

ing as defendants the Child Abuse Bureau social worker, Rialano; the two videotape operators, Mannion and Frazier; and the New York City Housing Authority Police Officers, Dixon and Clark.[2]

In the amended complaint Hill alleges the City failed to train and adequately supervise the employees of the New York County District Attorney's Office and that as a result she was deprived of various rights secured by the United States Constitution, including due process under the Fifth and Fourteenth Amendments. She further asserts that Adago, acting under color of state law, individually violated her constitutional rights, and that the other individual defendants conspired with Adago to deprive her of her constitutional rights.

On August 27, 1993 Adago, Rialano, Mannion and Frazier moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Dixon and Clark did not join in the motion, but instead answered the amended complaint on August 31, 1993. After a hearing held on December 3, 1993 Judge Sprizzo found Adago was not entitled to absolute immunity for at least some of the conduct alleged in the amended complaint and that, from the pleadings alone, it was impossible to determine whether Adago was acting in an advocacy or investigatory function when making the videotapes. Thus, the district court concluded that the issue of whether appellants were entitled to absolute immunity for that conduct could not then be resolved. The district judge did not address whether plaintiff had stated constitutional

claims under § 1983. In an order entered December 28, 1993 it denied Adago's and the other defendants' motion to dismiss; it also denied the City's motion to dismiss.

Defendants Adago, Rialano, Mannion and Frazier appeal from that order. For the reasons set forth below, we reverse as to Rialano, Mannion and Frazier and, as to Adago, in part.

## DISCUSSION

### I  Subject Matter Jurisdiction

Although Circuit Courts of Appeals have jurisdiction over appeals from "final decisions of the district courts," 28 U.S.C. § 1291 (1988), a denial of a motion to dismiss is ordinarily considered non-final, and therefore not immediately appealable. *See Lawson v. Abrams*, 863 F.2d 260, 262 (2d Cir. 1988). In *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court crafted an exception to the rule of nonappealability. To fall within the exception, the district court judgment appealed from must completely decide the disputed question, resolve an important issue separate from the merits of the suit, and be effectively unreviewable if appellate jurisdiction is deferred until a final judgment is entered. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978). An order denying a motion to dismiss a complaint against a state official when the dismissal motion is based on the official's assertion of

**2.** Plaintiff evidently added these co-defendants to her amended complaint in hopes of defeating Adago's anticipated absolute immunity defense through a charge of conspiracy. At the time the amended pleading was filed, we had held that a prosecutor entering into a conspiracy to present false testimony or to suppress exculpatory evidence was engaged in extra-judicial conduct not shielded by absolute immunity. *Dory v. Ryan*, 999 F.2d 679, 682–83 (2d Cir.1993); (*Dory I*); *San Filippo v. United States Trust Co.*, 737 F.2d 246, 254–55 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985).

Subsequently, we reconsidered *Dory I* in light of the Supreme Court's recent clarification of the absolute prosecutorial immunity doctrine set forth in *Buckley v. Fitzsimmons*, —— U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), and modified our original opinion, lim-

iting the conspiracy exception of *San Filippo* to witnesses, noting that:

> [t]he holding in *San Filippo* is based on the crucial distinction between the presentation of perjurious testimony and a conspiracy to present perjurious testimony.... The distinction is immaterial, however, with respect to prosecutors, who enjoy immunity not just for the presentation of testimony but ... for *all acts relating to their advocacy.*

*Dory v. Ryan*, 25 F.3d 81, 83 (1994) (*Dory II*) (emphasis added). Under the rule enunciated in *Dory II*, plaintiff derives no benefit from alleging a conspiracy. Therefore this decision reversing the district court's denial of the motion to dismiss charges against the alleged co-conspirators Rialano, Mannion and Frazier has no effect on the potential validity of plaintiff's action against Adago.

absolute or qualified immunity, to the extent that the denial turns on issues of law, is a collateral order immediately appealable under *Cohen*. *See, e.g., Kaminsky v. Rosenblum*, 929 F.2d 922, 925–26 (2d Cir.1991). Despite the lack of a final order, appellate jurisdiction is conferred because the existence of absolute and qualified immunity not only immunizes the state official from any liability, it also immunizes that official from suit. *See id.* at 926; *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir.1992).

■ When, on the other hand, resolution of the immunity defense depends upon disputed factual issues—not hinging on issues of law—an immediate appeal may not be taken. In such case, appellate review must await resolution of the factual issues at trial. *See DiMarco v. Rome Hosp.*, 952 F.2d 661, 665 (2d Cir.1992); *White v. Frank*, 855 F.2d 956, 958 (2d Cir.1988). The reason for this distinction is plain. When factual issues are present, the district court order does not conclusively determine the disputed question. *See Lawson*, 863 F.2d at 262. Thus, our jurisdiction over the issues presented on this appeal depends upon whether appellants' claims of absolute immunity can be decided as a matter of law.

## II  Absolute Immunity

### A.  *In General*

Appellants insist they are entitled to absolute immunity from § 1983 liability for all of the conduct that supports plaintiff's causes of action in the amended complaint. Adago argues he is entitled to absolute immunity because the conduct he allegedly engaged in occurred in connection with his role as an advocate. Appellants Rialano, Mannion and Frazier insist they too are entitled to absolute immunity because they acted as agents for the assistant district attorney.

■ Although § 1983 admits of no immunities on its face, the Supreme Court has ruled that Congress did not aim—when the original version of § 1983 was enacted—to abrogate those common law immunities that existed in 1871. *See generally Imbler v. Pachtman*, 424 U.S. 409, 417–18, 96 S.Ct. 984, 988–89, 47 L.Ed.2d 128 (1976); *Pierson*

*v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). An official who asserts absolute immunity from § 1983 liability shoulders the burden of establishing the existence of immunity for the function in question. *See Antoine v. Byers & Anderson, Inc.*, —— U.S. ——, —— & n. 4, 113 S.Ct. 2167, 2169 & n. 4, 124 L.Ed.2d 391 (1993). Because qualified immunity is presumed to be sufficient to protect public officials in the exercise of their discretionary duties, *see Burns v. Reed*, 500 U.S. 478, 486–87, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991), absolute immunity extends only so far as necessary to protect the judicial process. *Id.* at 485–87, 111 S.Ct. at 1938–40.

■ We agree that Rialano, Mannion and Frazier are entitled to the same degree of immunity as Adago himself for their activities while assisting with the investigation and prosecution of the case against plaintiff. Because absolute immunity is essential to safeguarding the integrity of the judicial process, it extends to those performing functions closely associated with that process. *See Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). This includes not only officials performing discretionary acts of a judicial nature, *see Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir.1988), but also individual employees who assist such an official and who act under that official's direction in performing functions closely tied to the judicial process. *See Davis v. Grusemeyer*, 996 F.2d 617, 631–32 (3d Cir.1993). Hence, under the "functional" test for immunity, the district attorney's office employees who assisted Adago in the preparation of the videotapes were as associated with the judicial process as was Adago himself. Analysis must therefore focus on the question of what degree of immunity Adago may himself be entitled to for his conduct.

### B.  *Functional Approach*

■ In determining whether absolute immunity obtains, we apply a "functional approach," looking to the function being performed rather than to the office or identity of the defendant. *See Buckley v. Fitzsimmons*, —— U.S. ——, ——, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993). State prosecutors are

entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995. Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial. *Id.* at 430–31, 96 S.Ct. at 995; *Buckley*, —— U.S. at ——, 113 S.Ct. at 2613. Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, *Buckley*, —— U.S. at ——, 113 S.Ct. at 2615, or determining which offenses are to be charged. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir.1993). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994).

▮ But for those acts that historically received no immunity at common law, absolute immunity may not be invoked. *Buckley*, —— U.S. at —— n. 5, 113 S.Ct. at 2616 n. 5 (noting that malicious prosecution was traditionally immune while the manufacture of evidence was not). When a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings. *Buckley*, —— U.S. at ——, 113 S.Ct. at 2614; *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir.1987) (distinguishing between the investigator's role in acquiring evidence and the advocate's in organizing and evaluating that evidence), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

▮ Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts. *See Barbera*, 836 F.2d at 100. "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, —— U.S. at ——, 113 S.Ct. at 2616. For example, prosecutors are not entitled to absolute immunity for the act of giving legal advice to the police

in the investigative phase of a criminal case, *Burns*, 500 U.S. at 493, 111 S.Ct. at 1943, or for assisting in a search and seizure or arrest. *Day v. Morgenthau*, 909 F.2d 75, 77–78 (2d Cir.1990).

### C. *Functional Test Applied*

The conduct on which plaintiff predicates her causes of action against Adago may be summarized as (1) unjustifiably directing that her children be removed from her home; (2) directing the police to arrest her without probable cause; (3) maliciously prosecuting her; (4) conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury; (5) deliberately suppressing *Brady* material; and (6) fabricating evidence.

▮ The first two acts are not protected by absolute immunity. The investigation of charges of child abuse and the removal of a child from its parents' custody is accorded only qualified protection. *See Robison v. Via*, 821 F.2d 913, 918–20 (2d Cir.1987). Nor is advising the police during the investigative stage of a case that they have probable cause to arrest an advocacy function. *See Burns*, 500 U.S. at 493, 111 S.Ct. at 1943. We agree with the district court to the extent it held appellants were not entitled to absolute immunity for these acts.

▮ But the trial court erred in refusing to dismiss plaintiff's claims based on the conduct summarized above as the third, fourth and fifth acts. Such conduct on the prosecutor's part is clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate. With respect to the third, malicious prosecution, it has long been settled that prosecutors are entitled to immunity from § 1983 liability for initiating a prosecution. *Imbler*, 424 U.S. at 431, 96 S.Ct. at 996; *Day*, 909 F.2d at 77. As to the fourth, we, along with several sister circuits, have consistently stated that prosecutors are immune from § 1983 liability for their conduct before a grand jury. *See Burns*, 500 U.S. at 490 n. 6, 111 S.Ct. at 1941 n. 6 (listing circuit court cases); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir.1984) (per curiam); *Fine v. City of New York*, 529 F.2d

70, 74 (2d Cir.1975). Nor do the plaintiff's allegations of a conspiracy alter this rule. Our recent holding in *Dory v. Ryan,* 25 F.3d at 83, which established that absolute prosecutorial immunity extends even to conspiracies to present false evidence at trial, compels the same result in the grand jury setting. "The fact that such a conspiracy is not something that is *properly* within the role of a prosecutor is immaterial," *id.* at 83, because immunity attaches to the function the prosecutor is performing, not the way in which it is performed. As to Adago's failure to turn over *Brady* material, the fifth act, this omission occurred after the prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy function. *See Imbler,* 424 U.S. at 416, 430, 96 S.Ct. at 988, 994–95. Consequently, to the extent that the district court denied absolute immunity to defendant Adago for the third, fourth, and fifth acts, it must be reversed.

### III   Claim of Immunity for Fabricating Evidence

■ We turn to the sixth act, the charge of deliberate fabrication of false evidence, which lies at the heart of the plaintiff's complaint, and which is the question that presents the closest issue on appeal. Hill alleges assistant district attorney Adago (1) coerced Joseph's testimony in part by removing Joseph and his brother from their mother's custody, (2) specifically instructed Joseph to accuse his mother during a videotaped interview, and (3) used this falsified tape while deliberately suppressing an earlier one that exonerated plaintiff Hill. Whether Adago may be sheltered by absolute immunity from liability for these alleged actions turns on whether or not they occurred in the course of his role as an advocate. Because he was preparing a videotaped examination of a witness to be presented to a grand jury, defendant maintains he is absolutely immune for any conduct on his part related to the creation of the videotapes. We recognize that a prosecutor is immune from liability for out-of-court efforts to control a witness' grand jury testimony that are made subsequent to the decision to indict. *See Buckley,* —— U.S. at ——, 113 S.Ct. at 2615.

But such immunity does not protect efforts to manufacture evidence that occur during the investigatory phase of a criminal case. *See Buckley,* —— U.S. at —— – ——, 113 S.Ct. at 2616–17. Hence, if the videotapes were made to collect or corroborate evidence against Hill in order to get probable cause to arrest her, the act of making the tapes receives only qualified immunity.

In *Buckley,* the Supreme Court stressed the lapse of time between the manufacture of evidence, the impanelling of a grand jury and the ultimate arrest in holding that the prosecutors were acting as investigators and not advocates. *Id.* at —— – ——, 113 S.Ct. at 2616–17. The fabrication of false evidence occurred at a time when the crime being investigated could be classified as "unsolved." *Id.* at ——, 113 S.Ct. at 2617. In the instant case, the time frame is more compressed: the investigation, arrest, and arraignment of Hill occurred within a week of Joseph's visit to the hospital. Nevertheless, as Adago did not order Hill's arrest until after filming the second interview, it is possible to conclude that this latter videotape was made, at least in part, to provide probable cause for Hill's arrest.

■ Adago insists that both videotaped interviews with Joseph were prepared in contemplation of presentation to the grand jury, and that they were conducted pursuant to CPL § 190.32, the New York statute providing for the use of videotaped testimony of child abuse witnesses in grand jury proceedings. During each videotape Adago stated that the interview was being conducted pursuant to § 190.32, and in the second he referred to "this grand jury proceeding." The second videotape was shown to the grand jury just six days after it was recorded. Nonetheless, neither the use of the statutory procedure nor the accelerated pace of events is controlling.

■ Further, the "functional" test for absolute immunity is an objective one; it does not depend upon the state actor's subjective intent. To the extent that the creation of the videotapes fulfilled an investigatory purpose, Adago cannot claim absolute immunity. The Supreme Court points out that investigative work may not be trans-

formed into advocacy simply by being characterized as work in preparation for trial, otherwise, absolute immunity against a suit brought by an innocent citizen for a constitutional wrong would always protect a district attorney who simply forces such a case to trial. *Buckley,* —— U.S. at ——, 113 S.Ct. at 2617. The same rationale applies when a prosecutor manufactures evidence for the purpose of obtaining probable cause to arrest a suspect, even when the evidence obtained is in a form suitable for later presentation to the grand jury. Therefore, if before obtaining Joseph's second videotaped statement Adago lacked probable cause to arrest Hill, and the results of that interview contributed to his finding probable cause, the interview would then be held to be an investigatory function.

██ It is impossible, as the district court observed, to determine from the pleadings alone what function Adago was engaged in when he and the other defendants videotaped the interview of Joseph Hill. Quite plainly, when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss. *See Lawson,* 863 F.2d at 263. Because the immunity issue respecting the videotapes raises factual issues that cannot be conclusively determined at this stage in the litigation, it is not appealable under the *Cohen* doctrine, and we therefore have no jurisdiction to entertain it. *See White,* 855 F.2d at 962; *United States v. Yonkers Bd. of Educ.,* 893 F.2d 498, 502–04 (2d Cir.1990) (applying same principle in an Eleventh Amendment immunity case). Thus, that portion of this appeal must be dismissed.

### IV Qualified Immunity and Failure to State a Claim

██ Adago urges that even were he not to be entitled to absolute immunity for some of his conduct, qualified immunity shields him from liability for it. We decline to address this argument because defendants did not raise this defense in their motion to

dismiss, nor did the district court decide it. As a general rule, appellate courts do not consider issues that were not raised at the district court. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994).

██ In addition, the record on appeal is inadequate for us to determine whether Adago can claim the protection of qualified immunity. Like absolute immunity, qualified immunity "is an *immunity from suit* rather than a mere defense to liability ... [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). To some extent the availability of qualified immunity turns on inquiries into specific facts. Under qualified immunity, a government official may claim immunity from suit only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful. *See Washington Square Post # 1212 American Legion v. Maduro,* 907 F.2d 1288, 1292 (2d Cir.1990).

The objective reasonableness of Adago's actions in removing plaintiff's children from her custody and ordering her arrest depends in part upon information available to him at the time. This information would include the content of other statements made by Joseph during off-camera interrogation, the results of any investigation of Joseph's former foster family, and the plaintiff's own history of abusive behavior. The record before us does not indicate those facts upon which Adago based his actions.

██ Appellants further contend that plaintiff's amended complaint fails to state a claim upon which relief can be granted and therefore should be dismissed on the merits pursuant to Fed.R.Civ.P. 12(b)(6). A denial of a motion to dismiss for failure to state a claim is neither a final decision, nor a basis for interlocutory review under *Cohen,* and is not, standing alone, immediately appealable. *See San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 255 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985).

When jurisdiction over one issue in an interlocutory appeal exists, it is within our discretion to decide other, nonappealable issues in the case where the appealable and nonappealable issues sufficiently overlap so as to warrant taking jurisdiction over the appeal. *See id.; see also Golino v. City of New Haven,* 950 F.2d 864, 868–69 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).

Such sufficient overlap is not found here. Review of the immunity issue requires a determination of whether Adago was acting in an advocacy or investigatory function; reviewing the motion to dismiss for failure to state a claim, in contrast, depends upon whether plaintiff has adequately alleged constitutional violations actionable under § 1983. Because these inquiries do not overlap, we decline to exercise jurisdiction to review the district court's denial of Adago's motion to dismiss on the merits. *See White,* 855 F.2d at 957 n. 1; *cf. Francis v. Coughlin,* 849 F.2d 778, 780–81 (2d Cir.1988) (per curiam).

■ Nonetheless, with respect to the remaining appellants, we can review the motion to dismiss without reaching the adequacy of plaintiff's constitutional claims. Adago's co-appellants are charged only with acts of conspiracy, and plaintiff has not alleged facts sufficient to support this charge. Rialano, an employee of the Child Abuse Bureau, assisted in the videotaped interviews of Joseph Hill; Frazier and Mannion, video technicians with the district attorney's office, operated the cameras. Even taking the facts in the light most favorable to the plaintiff, it would defy credibility to believe these individuals were acting other than in their capacity as employees and at Adago's direction. In particular, plaintiff failed to allege these defendants possessed the requisite intent to engage in a conspiracy to fabricate evidence against the plaintiff and to cause her to be unjustly incarcerated. Thus, the denial of these defendants' motion to dismiss with respect to all charges of conspiracy in plaintiff's complaint must be reversed.

## CONCLUSION

In sum, we affirm the district court insofar as it held that since Adago was not entitled to absolute immunity it would refuse to dismiss those portions of plaintiff's complaint that alleged Adago unjustifiably directed plaintiff's children be removed from her home and directed the police to arrest her without probable cause. We reverse the district court insofar as it denied Adago's motion to dismiss plaintiff's causes of action alleging malicious prosecution, conspiracy to present falsified evidence to, and withhold exculpatory evidence from, a grand jury and for deliberately suppressing *Brady* material because as to those causes of action an assistant district attorney is entitled to absolute immunity. Upon remand, the district court is therefore directed to enter an order dismissing those causes of action.

Since plaintiff's claim that Adago fabricated evidence raises factual issues with respect to the assistant district attorney's function at the time the objected conduct occurred, it could not be conclusively determined. Hence, the appeal from this part of the district court's order is an interlocutory appeal over which we have no jurisdiction. The appeal from that portion of the order must therefore be dismissed.

We reverse the district court's denial of the motions to dismiss made by defendants Rialano, Frazier and Mannion. On remand, the district court is directed to enter an order granting those defendants' motions to dismiss all the conspiracy charges alleged against them in plaintiff's complaint.

Accordingly, for the reasons stated, the judgment of the district court is affirmed, in part, and reversed and dismissed, in part, and remanded to the district court for further proceedings in accordance with this opinion.

VAN GRAAFEILAND, Circuit Judge, concurring:

I concur in the result.