Felicia WILLIAMS

v.

Jennifer HAUSER, et al.

Civ. No. 3:96cv786(AHN).

United States District Court,
D. Connecticut.

Dec. 9, 1996.

John R. Williams, New Haven, CT, for plaintiff.

Kimberly P. Massicotte, Assistant Attorney General, Hartford, CT for Hauser, MacKenzie and Steers.

John Welch of Winnick, Vine, Welch, Donnelly & Teodosio, Shelton, CT for Mancini, Narowski, Lucarelli & Lajeunese.

## RULING ON DEFENDANTS' MOTION TO DISMISS

NEVAS, District Judge.

Plaintiff, Felicia Williams ("Williams"), brings this action against three employees of the Connecticut Department of Children and Families ("DCF") and four police officers of the Derby, Connecticut Police Department, for alleged violations of the First, Fourth, Ninth and Fourteenth Amendments in connection with a court order to obtain custody of Williams's children. Now pending before the court is a motion to dismiss brought by the three DCF employees, Jennifer Hauser ("Hauser"), Catherine MacKenzie ("MacKenzie") and Michael Steers ("Steers") (hereinafter collectively referred to as "the DCF employees").

For the following reasons, this motion [doc. # 16] is DENIED IN PART and GRANTED IN PART.

## FACTS

On February 23, 1995, Williams reported to DCF that she thought her two children, Tiffany (D.O.B. 11/26/90) and Dominique (D.O.B. 3/1/92), were being sexually abused at their day care center. (See Compl. ¶ 8.) The next day a medical examination of one of the daughters confirmed evidence of sexual abuse. (See id. ¶ 9.)

Hauser, along with a police officer, subsequently began an investigation that included numerous interviews with Williams and her daughters. (See id. ¶ 10-11.) According to Williams, this investigation confirmed that one or both of the daughters had been sexually abused outside of their home. However, no arrests were made. (See id. ¶ 12-14.)

Instead, on April 7, 1995, the DCF employees obtained a court order to take custody of Williams's daughters because, as Williams claims, "they felt [Williams] was not being sufficiently compliant and cooperative with them." (Compl. ¶ 15.) To secure this order, the DCF employees allegedly "maliciously, wilfully and wantonly prepared a false and misleading application in which they intentionally misstated and twisted the facts." (Compl. ¶ 16.) Williams alleges that they did this to create the false impression that the children were not safe in her custody. (Id.)

As a result of this alleged false application, the defendant police officers seized the plaintiff's daughters. (See Compl. ¶ 18.) According to Williams, the defendant police officers

assaulted her when she tried to protect her children from being taken, causing her serious physical injuries. (*See id.* ¶ 19.)

Williams's daughters were held in state custody for over two months before being returned. (*See id.* ¶ 20.) As a consequence of this, Williams's family was severely traumatized and Williams suffered extreme emotional distress. (*Id.*) By her complaint, Williams alleges that the defendants' actions violated her constitutional rights under the First, Fourth, Ninth and Fourteenth Amendments, and subjected her to emotional distress, actionable under Connecticut state law. (*See* Compl. ¶¶ 22–23.)

## STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Allen v. West-Point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686).

## DISCUSSION

In their motion to dismiss, the DCF employees state that the action should be dismissed for three reasons: 1) they are absolutely immune from liability because social workers seeking court orders for the custody of children are protected by prosecutorial absolute immunity; 2) Williams has failed to state a claim against them for use of unreasonable and excessive force; and 3) the court, if it dismisses the federal claims, should deny supplemental jurisdiction over the state tort claims. (*See* Defs.' Mot. Dismiss at 1–2.) [1]

### I. *Absolute Prosecutorial Immunity*

The Supreme Court has not yet decided whether social workers are entitled to prosecutorial absolute immunity. The Fourth, Sixth, Seventh, and Ninth Circuits have all held that social workers engaged in activities that could be considered prosecutorial, and not investigative, are entitled to absolute immunity. *See Vosburg v. Dep't of Social Serv.,* 884 F.2d 133 (4th Cir.1989); *Salyer v. Patrick,* 874 F.2d 374 (6th Cir.1989); *Millspaugh v. County Dep't of Pub, Welfare,* 937 F.2d 1172 (7th Cir.1991) (limiting absolute immunity to social worker's in-court testimony); *Meyers v. Contra Costa County Dep't of Social Serv.,* 812 F.2d 1154 (9th Cir.), *cert. denied,* 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987). The Tenth Circuit, however, has declined to recognize absolute immunity for social workers. *See Snell v. Tunnell,* 920 F.2d 673 (10th Cir.1990) (holding that social workers engage in primarily investigative functions and should only be afforded qualified immunity).

In those Circuits that have recognized absolute immunity for social workers, the courts have relied primarily on two Supreme Court decisions. In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Court held that prosecutorial immunity is necessary to allow the prosecutor to exercise independent judgment without the fear or threat of section 1983 litigation. *Id.* at 424–26, 96 S.Ct. at 992–93. In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court held that "[a]bsolute immunity is ... necessary to assure that judges, advocates, and witnesses can perform

---

1. The DCF employees argue in their memorandum in support of the motion to dismiss that Williams "has failed to state a cause of action for duty to protect." (Defs.' Mem.Supp.Mot.Dismiss at 17.) The court, however, limits its ruling to the three grounds asserted in the motion to dismiss. In the motion to dismiss, the defendant social workers failed to state this argument as a grounds for dismissal, and Williams did not address it in her memorandum in opposition.

their respective functions without harassment or intimidation." *Id.* at 512, 98 S.Ct. at 2913.

The Second Circuit, while ruling on analogous issues, also has yet to decide whether social workers should be accorded absolute immunity. In *van Emrik v. Chemung County Dep't of Social Serv.*, 911 F.2d 863 (2d Cir.1990), the Court held that child protective services caseworkers were entitled to qualified immunity in connection with their removal of a child from the custody of its parents during a child abuse investigation; however, the issue of absolute immunity was never presented to the court. In *Walden v. Wishengrad*, 745 F.2d 149 (2d Cir.1984), the court granted absolute immunity to an attorney who had initiated child custody proceedings. Subsequently, however, the court held that an assistant district attorney, although entitled to absolute immunity for prosecuting a case, was not entitled to absolute immunity for directing that a child be removed from the home. *See Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir.1995). In *Hill*, the court stated, "The investigation of charges of child abuse and the removal of a child from its parents' custody is accorded only qualified protection." 45 F.3d at 661 (citing *Robison v. Via*, 821 F.2d 913, 918–20 (2d Cir.1987)).

The determining factor in these cases has been the extent to which the person seeking absolute immunity performs functions that are "closely tied to the judicial process." *Hill*, 45 F.3d at 660. If the employee was acting in an investigative or administrative capacity, the court will not grant them absolute immunity. *See Lawson v. Abrams*, 863 F.2d 260, 263 (2d Cir.1988).

Judge Dorsey, in the one case on point in this District, held that the removal of a child, while not investigative, was not "so intimately associated with the adjudicative process" to justify absolute immunity. *Doe v. Connecticut Dep't of Children and Youth Serv.*, 712 F.Supp. 277 (D.Conn.1989), *aff'd on other grounds*, 911 F.2d 868 (1990). In addition, he held that the decision to seek an ex parte order for temporary custody was "not sufficiently analogous to a prosecutorial function to warrant absolute immunity." *Id. See also Doe v. County of Suffolk*, 494 F.Supp.

179 (E.D.N.Y.1980) (denying absolute immunity to social worker who filed petition charging mother with neglect); *cf. Whelehan v. County of Monroe*, 558 F.Supp. 1093 (W.D.N.Y.1983) (granting absolute immunity to social workers initiating child protective proceedings because their function was analogous to that of prosecutor).

Applying Judge Dorsey's reasoning in *Doe v. Connecticut Dept. of Children and Youth Serv.* and the Second Circuit's test in *Hill*, the court denies the defendant social workers' motion and limits their protection to qualified immunity. First, the court agrees with Judge Dorsey and likewise holds that the removal of a child, while not investigative, is not "so intimately associated with the adjudicative process" to justify absolute immunity. 712 F.Supp. at 282. The social worker's role in removing a child is more administrative and investigative than prosecutorial. A social worker investigates a child to determine if there is evidence of abuse or neglect. If enough evidence exists, the social worker or his supervisor files a removal petition to initiate court intervention. However, the attorney for the state (i.e. an assistant attorney general), not a social worker, is responsible for presenting the removal case to the court and convincing the court to intervene. Also, a prosecutor works within the court process. A social worker simply initiates the judicial process and then turns the case over to the Attorney General's office. While a strict set of disciplinary rules govern the actions of a prosecutor because he or she is a lawyer, no analogous rules govern the actions of a social worker. Thus, absolute immunity would protect the social worker from the disciplinary actions to which the prosecutor would be subject.

Second, even if the court disagreed with Judge Dorsey and held that the removal of a child is generally sufficiently related to the judicial process to justify the granting of absolute immunity, this specific case would not warrant such a finding. The social workers' role in this case is much more akin to that of an investigator or an administrator than that of a prosecutor. Based on the limited record before the court, it appears that Hauser investigated Williams's initial

complaint and determined that DCF should intervene. Then, after Hauser had completed her investigation, her supervisors, MacKenzie and Steers, filed a removal petition in order to initiate court intervention. Their involvement in the court process ceased at that point. Once the social worker files a petition for removal, he or she turns the case over to an assistant attorney general who prosecutes the case in court. Thus, applying the functional test set down in *Hill*, the court finds that the function of these DCF employees was more analogous to that of a police officer or case agent in a criminal prosecution than that of a prosecutor. *See* 45 F.3d at 660.

For these reasons, the motion to dismiss based on absolute immunity is denied. Qualified immunity sufficiently protects the interests of the DCF employees and ensures the right balance between an efficient judicial process and the responsible removal of children.

## II. *Unreasonable and Excessive Force Claim*

The DCF employees claim that the cause of action for use of unreasonable and excessive force should be dismissed because the Complaint only alleges that the defendant police officers subjected Williams to unreasonable and excessive force. (*See* Defs.' Mot. Dismiss at 1.) In response, Williams admits that the complaint does not charge the DCF employees with using unreasonable force and states that, because the complaint makes no such allegation, there is nothing for the court to dismiss. (*See* Pl.'s Mem.Opp.Mot.Dismiss at 1.)

Williams is correct. The Complaint makes no such allegation. However, the Complaint does not state separate counts for each cause of action and is unclear as to which causes of action apply to which defendants. For this reason, to the extent that the Complaint can be construed to allege the use of unreasonable and excessive force by the defendant social workers, the defendant social workers' motion to dismiss with respect to this cause of action is granted.

## III. *State Law Claims*

The DCF employees argue that the court, if it denies jurisdiction over the federal claims, should deny supplemental jurisdiction over the state claims. However, the court has not denied jurisdiction over the federal claims. Thus, the defendant social workers' motion to dismiss under Rule 12(b)(1) as to the state law claims is denied.

### CONCLUSION

For the reasons stated above, the DCF employees' Motion to Dismiss [doc. # 16] is GRANTED as to the unreasonable and excessive use of force claim against them and DENIED as to all of the other federal and state causes of action.

SO ORDERED this 4th day of December, 1996 at Bridgeport, Connecticut.