356 F.3d 495
 Michael BERNARD, Ronald Kluesener, and Douglas Jacob, Plaintiffs-Appellees,
v.
COUNTY OF SUFFOLK and James M. Catterson, Jr., individually and in his capacity as Suffolk County District Attorney, Defendants,
Richard T. Dunne, individually and in his capacity as Suffolk County Assistant District Attorney, Christopher A. McPartland, individually and in his capacity as Suffolk County Assistant District Attorney, and Peter Kelleher, individually and in his capacity as Suffolk County Detective, Defendants-Appellants.
 No. 02-9313.
 United States Court of Appeals, Second Circuit.
 Argued: June 19, 2003.
 Decided: January 30, 2004.
 
 Appeal from the United States District Court for the Eastern District of New York, Joanna Seybert, J. COPYRIGHT MATERIAL OMITTED Orrit Hershkovitz, (Paul F. Millus, of counsel) Snitow, Kanfer, Holtzer & Millus, New York, New York, for Defendants-Appellants.
 William D. Wexler, (Kevin G. Snover, of counsel), North Babylon, New York, for Plaintiffs-Appellees.
 Before: B.D. PARKER and RAGGI, Circuit Judges, SWAIN, District Judge.[1]
 RAGGI, Circuit Judge.
 
 
 1
 Defendants-Appellants, Richard T. Dunne and Christopher A. McPartland, Suffolk County Assistant District Attorneys, and Peter Kelleher, a Suffolk County Detective, appeal from an order of the United States District Court for the Eastern District of New York (Joanna Seybert, Judge), denying their motion to dismiss, on the ground of absolute prosecutorial immunity, the complaint of Plaintiffs-Appellees, Michael Bernard, Ronald Kluesener, and Douglas Jacob, filed pursuant to 42 U.S.C. § 1983. Plaintiffs accuse defendants of misusing and conspiring to misuse their public offices and the judicial process for political purposes by investigating and prosecuting plaintiffs without probable cause. Accepting these allegations as true, as it was obliged to do on consideration of a motion to dismiss, the district court denied dismissal, holding that defendants' alleged political motivation removed their conduct from the scope of activities shielded by absolute immunity. We reverse with respect to the denial of absolute immunity for advocative functions, reiterating what this court has held in other cases: as long as a prosecutor acts with colorable authority, absolute immunity shields his performance of advocative functions regardless of motivation. We remand the case to the district court so that it can enter an order dismissing plaintiffs' claims of advocative misconduct, specifically their claims for malicious and selective prosecution, as well as for misconduct in the presentation of evidence to grand juries.
 
 
 2
 Plaintiffs submit that defendants nevertheless are not entitled to dismissal of the entire complaint on remand because it further pleads defendants' misconduct in their performance of investigative functions, for which absolute immunity provides no shield. Defendants do not claim absolute immunity for investigative functions; instead, they submit that plaintiffs' pleadings fail to state a claim for investigative misconduct. This court declines to exercise pendent interlocutory jurisdiction over the issue. Instead, we dismiss this part of the appeal without prejudice to the parties' pursuing the matter further on remand.
 
 I. Background
 
 3
 On August 10, 2001, the date this suit was filed, all of the plaintiffs were registered Democrats who had been appointed to various official positions in the Town of Babylon by the Democratic Town Supervisor Richard H. Schaffer: Michael Bernard was the Town Commissioner of Buildings and Grounds, Ronald Kluesener served as Commissioner of Environmental Control, and Douglas Jacob was Director of Finance and Town Comptroller. In their complaint, plaintiffs allege that defendant Suffolk County, as well as individual defendants, Suffolk County District Attorney James M. Catterson, Jr., Assistant District Attorneys Richard T. Dunne and Christopher A. McPartland, and Suffolk County Police Detective Peter Kelleher, all Republicans, misused their law enforcement authority and the judicial process to pursue a series of politically motivated investigations and indictments without probable cause in a failed effort to discredit Babylon's Democratic leaders. Plaintiffs allege that by naming them in three such indictments, defendants subjected them to malicious and selective prosecution in violation of their constitutional rights. We review the specific misconduct alleged in connection with these three indictments.
 
 A. The March 31, 1997 Indictment
 
 4
 On March 31, 1997, at the request of defendants Dunne and McPartland, a Suffolk County grand jury returned an indictment against plaintiffs Bernard and Kluesener, charging them with three counts of offering a false instrument for filing and three counts of falsifying business records. Kluesener stood trial and, on January 9, 1999, a petit jury acquitted him on all charges. On August 31, 2001, the court dismissed all charges against Bernard.
 
 
 5
 Plaintiffs allege that defendants pursued the indictment for political purposes, that they never possessed probable cause to support the counts charged, and that, throughout the investigation of the case, they "were aware that inculpatory evidence was manufactured and/or contrived" at the same time that they "disregarded exculpatory evidence." Complaint at ¶¶ 36-37. In support of these allegations, plaintiffs assert that certain defendants — not identified by name — endeavored to conceal their political animosity toward plaintiffs and the Schaffer Administration by misrepresenting to the public, the press, and the court that the prosecution had its origins in a referral to the District Attorney's Office from the New York State Comptroller.
 
 
 6
 They further allege that on March 30, 1997, the day before the indictment was filed, when Kluesener was interviewed at his home by defendant Kelleher and other investigators of the District Attorney's Office and proffered documentary evidence demonstrating his innocence, Kelleher summarily dismissed the proffer stating that District Attorney Catterson was determined "to get" Town Supervisor Schaffer through Kluesener. Id. at ¶ 31. Similarly, in a November 1997 conversation, Suffolk County Republican leader John Powell allegedly told plaintiff Bernard that his indictment was politically motivated and that the District Attorney's Office was pursuing a "witch hunt to get Schaffer." Id. at ¶ 25.
 
 B. The March 31, 1998 Indictment
 
 7
 On March 31, 1998, defendants Dunne and McPartland procured a second indictment from the grand jury charging defendants Kluesener and Jacob with grand larceny, falsifying business records, conspiracy, and several counts of official misconduct. Following a jury trial, both defendants were acquitted of all charges.
 
 
 8
 Once again, plaintiffs assert that defendants' sole motive in pursuing these charges was to damage the Babylon Democratic leadership. Toward that end, a "member of the District Attorney's Office" — apparently not any of the named defendants — met with Republican leader Powell and solicited his assistance in securing a witness who could testify against Kluesener and Jacob. Powell and the unidentified member of the District Attorney's Office thereafter met secretly with Dominick Testa, who did, in fact, testify against plaintiffs, and who subsequently "admitted that he embellished his testimony because it was what Powell and a member of the District Attorney's Office wanted, because they were on a witch hunt for Schaffer." Id. at ¶ 55. Indeed, plaintiffs allege that "Testa stated that he perjured himself because Powell and defendants wanted to `hammer Schaffer.'" Id.
 
 
 9
 Plaintiffs do not identify the "defendants" referenced by Testa. The only allegations naming a specific defendant concern Dunne. The complaint alleges that "on numerous occasions during the investigation of the case and prior to criminal charges," defendant Dunne met with Testa at sites outside the District Attorney's office, including a landfill, a donut shop, and a shopping mall. Plaintiffs do not suggest that Dunne himself induced or even encouraged Testa to commit perjury at any of these meetings. Rather, the complaint alleges that "Dunne was aware that Testa had met with Powell and with a member of the District Attorney's Office to create testimony," that he nevertheless subpoenaed Testa to testify before the grand jury, that he concealed from the grand jury the fact of the witness's meetings with Powell, and that "on information and belief ... [Dunne] suborned [Testa's] perjury before the Grand Jury." Id. at ¶ 52.
 
 C. The July 2, 1998 Indictment
 
 10
 On July 2, 1998, "defendants" — again not identified by name — procured a third indictment, this time charging plaintiff Jacob with receiving a bribe, receiving a reward for official misconduct, conspiracy, and two counts of official misconduct. Plaintiffs assert that throughout the investigation and prosecution of this case, defendants never had any evidence to support a bribery charge; their sole purpose was to secure a politically embarrassing indictment. "Upon information and belief," plaintiffs charge that unidentified defendants "coerced and threatened" witness James Rogers to testify against Jacob. Id. at ¶ 69. When Rogers refused to testify at trial, defendants were obliged to dismiss the indictment.
 
 
 11
 Further, as evidence of selective prosecution, plaintiffs allege, "upon information and belief," that defendants decided not to prosecute another person implicated in a bribery scheme because his political ties were Republican rather than Democratic. Id. at ¶ 66.
 
 D. The Charged Causes of Action
 
 12
 Plaintiffs' complaint pleads seven causes of action, the first three pursuant to 42 U.S.C. § 1983, the last four under state law.
 
 
 13
 The first federal claim sweeps broadly, charging defendants with violating plaintiffs' "rights under the Fourteenth Amendment to be secure in their persons, to be free from punishment without due process and equal protection of laws, and further to be free from conspirators [sic] to violate their rights under the Fourteenth Amendment." Id. at ¶ 82. The district court construed the claim as one for malicious and selective prosecution. See Bernard v. County of Suffolk, No. 01 CV 5403, at 10-13, 19 (E.D.N.Y. Sept. 12, 2002).
 
 
 14
 Plaintiffs' second claim, for conspiracy, charged a scheme to injure Babylon Democrats through the use of "unfounded and improper investigations and criminal charges." Complaint at ¶ 87. The district court similarly construed the conspiracy claim to focus on defendants' alleged malicious and selective prosecution of plaintiffs: "Drawing all inferences in the plaintiffs' favor, the complaint alleges that the defendants conspired together and with other state actors in order to prosecute the plaintiffs for their own personal purposes." Bernard v. County of Suffolk, No. 01 CV 5403, at 14.
 
 
 15
 The third federal claim charges defendants with abusing their prosecutorial power for improper political purposes in violation of plaintiffs' right to substantive due process. Complaint at ¶¶ 92-93.
 
 
 16
 Plaintiffs' state law claims all sound in tort: three claims for malicious prosecution and one claim for intentional infliction of emotional distress. Id. at ¶¶ 104-121.
 
 
 17
 E. Defendants' Motions to Dismiss the Complaint
 
 
 18
 By motion dated January 18, 2002, named-defendants Catterson, Dunne, McPartland, and Kelleher moved to dismiss the complaint on the grounds that plaintiffs' federal claims were barred by the Eleventh Amendment and absolute prosecutorial immunity, and that the court should not exercise supplemental jurisdiction over plaintiffs' state law claims. Defendants further argued for dismissal because plaintiffs failed to state cognizable claims for (a) violation of substantive due process, (b) violation of equal protection, and (c) intentional infliction of emotional distress. Defendants also invoked common law immunity in urging dismissal of plaintiffs' state law malicious prosecution claims.
 
 
 19
 By motion dated February 27, 2002, Suffolk County similarly moved to dismiss on the grounds that the complaint failed to plead the municipal custom or policy necessary to state a claim under § 1983 and that its conspiracy claim was barred by the intracorporate conspiracy doctrine.
 
 
 20
 In a detailed memorandum decision dated September 12, 2002, the district court granted defendants' motions in part and denied them in part. It dismissed the complaint against Suffolk County in its entirety but without prejudice to plaintiffs' filing an amended complaint within thirty days. As for the individual defendants, the district court, apparently without opposition from plaintiffs, granted dismissal of all claims brought against defendants in their official capacities based on the Eleventh Amendment. Insofar as defendants were sued in their individual capacities, the district court ruled that plaintiffs had failed adequately to plead defendant Catterson's personal involvement in the alleged constitutional deprivations and, accordingly, dismissed the complaint against him without prejudice to plaintiffs' filing an amended pleading within thirty days.[2] With respect to defendants Dunne, McPartland, and Kelleher, the district court dismissed plaintiffs' third federal claim for violation of substantive due process in light of Albright v. Oliver, 510 U.S. 266, 274-75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (holding that a § 1983 claim for prosecution without probable cause arises under the Fourth Amendment not substantive due process). Nevertheless, it denied defendants' motion to dismiss the first two federal claims, i.e., the substantive and conspiratorial claims for malicious and selective prosecution, ruling that defendants' alleged political motivations in pursuing plaintiffs' prosecutions took their actions "outside the scope of their official roles." Bernard v. County of Suffolk, No. 01 CV 5403, at 11. As the court explained:
 
 
 21
 The plaintiffs allege that the defendants acted outside the scope of their official duties in conducting a politically motivated "witch hunt," initiating and continuing to prosecute them in the absence of probable cause. Accepting the allegations that the defendants misused their authority and abused the judicial process to advance their own political agenda as true, the Court concludes that defendants' conduct clearly falls outside the scope of their official duties. Consequently, the Court rejects the defendants' argument that the claims should be dismissed on the basis of absolute immunity.
 
 Id. at 12.[3]
 
 22
 The district court also declined to dismiss plaintiffs' state law claims.
 
 II. Discussion
 A. Jurisdiction
 
 23
 A denial of a motion to dismiss is not a final order and, thus, is not immediately appealable unless it satisfies the "collateral order" exception articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-46, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (providing for immediate appeal where order completely decides the disputed question, resolves an important issue separate from the merits of the suit, and is effectively unreviewable if appellate jurisdiction is deferred until final judgment). In Hill v. City of New York, 45 F.3d 653, 659-60 (2d Cir.1995), this court ruled that an order denying a motion to dismiss based on a claim of absolute or qualified immunity is immediately appealable pursuant to Cohen provided the challenged ruling turns on issues of law rather than fact. Such interlocutory appeal is consistent with the principle that "absolute and qualified immunity not only immunizes the state official from any liability, it also immunizes that official from suit." Id. at 660 (and cases cited therein).
 
 
 24
 To the extent the district court's denial of defendants' motion was based on a legal ruling that politically motivated prosecutions fall outside the scope of conduct shielded by absolute prosecutorial immunity, this court plainly has jurisdiction to hear defendants' appeal pursuant to the holdings in Cohen and Hill. Under the same precedent, however, this court is without jurisdiction to resolve the parties' dispute as to whether claims of investigative misconduct survive defendants' absolute immunity challenge to the complaint. Although the court has discretion to exercise pendent appellate jurisdiction in limited cases, see Hill v. City of New York, 45 F.3d at 664, for reasons discussed infra in Part C of this opinion, we conclude that this is not a case warranting such exercise.
 
 
 25
 B. Defendants' Alleged Political Motivation Does Not Deprive Them of Absolute Immunity for Their Performance of Advocative Functions
 
 
 26
 Defendants submit that the district court erred in ruling that an improper political motive could take their decisions to prosecute plaintiffs and their conduct before the grand jury outside the scope of official functions shielded by absolute prosecutorial immunity. We agree that a defendant's motivation in performing such advocative functions is irrelevant to the applicability of absolute immunity.
 
 
 27
 In creating a civil cause of action for constitutional torts, 42 U.S.C. § 1983 itself recognizes no immunities. Nevertheless, the Supreme Court has concluded that Congress did not intend § 1983 to abrogate "immunities `well grounded in history and reason.'" Imbler v. Pachtman, 424 U.S. 409, 418, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (quoting Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). Such immunities are of two types: absolute and qualified. Buckley v. Fitzsimmons, 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. at 430-31, 96 S.Ct. 984; see also Hill v. City of New York, 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).
 
 
 28
 By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. Buckley v. Fitzsimmons, 509 U.S. at 273, 113 S.Ct. 2606 ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); accord Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000).
 
 
 29
 In applying this "functional approach" to claims of absolute immunity, courts focus on "the nature of the function performed, not the identity of the actor who performed it." Buckley v. Fitzsimmons, 509 U.S. at 269, 113 S.Ct. 2606 (citations omitted); see Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). While it is the party claiming absolute immunity who "bears the burden" of establishing its applicability, Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), accord Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir.1996) (holding that prosecutors must show that they were acting as advocates when they engaged in challenged function), once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused, see Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985).
 
 
 30
 The latter point is critical to this case. As the district court reasonably inferred from plaintiffs' pleading, the crux of their complaint is for malicious and selective prosecution based on defendants Dunne's and McPartland's decisions — joined in by Detective Kelleher, who was then working under the direction of the District Attorney's office — to seek indictments despite the lack of probable cause. Plaintiffs further accuse defendants of knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from, the various grand juries that returned these flawed indictments. Well established case law recognizes such conduct to lie at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process. See Imbler v. Pachtman, 424 U.S. at 431, 96 S.Ct. 984 (holding prosecutors absolutely immune for initiating prosecutions and presenting evidence); accord Buckley v. Fitzsimmons, 509 U.S. at 274 n. 5, 113 S.Ct. 2606 (acknowledging that absolute immunity shields "a prosecutor's decision to bring an indictment, whether he has probable cause or not"); Pinaud v. County of Suffolk, 52 F.3d 1139, 1149 (2d Cir.1995) (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); Hill v. City of New York, 45 F.3d at 660-61 (holding prosecutors and those working under their direction absolutely immune for initiating prosecution and for conduct before a grand jury); see also Zahrey v. Coffey, 221 F.3d at 342 (noting parties' agreement that absolute immunity shields prosecutor for presentation of "allegedly false testimony to the grand jury").
 
 
 31
 The district court nevertheless concluded that if, as plaintiffs alleged, defendants pursued prosecutions without probable cause and engaged in misconduct before the grand jury as part of a political "witch hunt," then that motive would remove their conduct from the scope of official duties shielded by absolute immunity. As support for this conclusion, the district court cited Daniels v. City of Binghamton, 1998 WL 357336, at *3 (N.D.N.Y. June 29, 1998), in which the plaintiff alleged a racially motivated malicious prosecution. Daniels ruled that absolute immunity would not apply if "the prosecution was conducted in a racially discriminatory manner." Id.[4]
 
 
 32
 Certainly, racially invidious or partisan prosecutions, pursued without probable cause, are reprehensible, but such motives do not necessarily remove conduct from the protection of absolute immunity.[5] As the Supreme Court recognized in Imbler v. Pachtman, prosecutorial misconduct may be subject to professional or even criminal sanctions at the same time that it fits within the scope of advocative functions entitled to absolute immunity from suit for money damages. 424 U.S. at 429, 96 S.Ct. 984; accord Schloss v. Bouse, 876 F.2d 287, 292 (2d Cir.1989) (recognizing that prosecutors enjoying absolute immunity from suit for money damages may face other sanctions).
 
 
 33
 A defendant engaged in advocative functions will be denied absolute immunity only if he acts "without any colorable claim of authority." Schloss v. Bouse, 876 F.2d at 291 (quoting Barr v. Abrams, 810 F.2d 358, 361 (2d Cir.1987)). The appropriate inquiry, thus, is not whether authorized acts are performed with a good or bad motive, but whether the acts at issue are beyond the prosecutor's authority. Accordingly, where a prosecutor is sued under § 1983 for unconstitutional abuse of his discretion to initiate prosecutions, a court will begin by considering whether relevant statutes authorize prosecution for the charged conduct. If they do not, absolute immunity must be denied. Id. But if the laws do authorize prosecution for the charged crimes, a court will further consider whether the defendant has intertwined his exercise of authorized prosecutorial discretion with other, unauthorized conduct. For example, where a prosecutor has linked his authorized discretion to initiate or drop criminal charges to an unauthorized demand for a bribe, sexual favors, or the defendant's performance of a religious act, absolute immunity has been denied. Id. at 291-92; accord Doe v. Phillips, 81 F.3d at 1210.
 
 
 34
 Where, as in this case, a prosecutor's charging decisions are not accompanied by any such unauthorized demands, the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity. As this court observed in Doe, if "an act [is] within a prosecutor's jurisdiction as a judicial officer," "absolute immunity attache[s] to his actions, regardless of his motivation." 81 F.3d at 1210. This comports with Dory v. Ryan, in which the court earlier ruled that "absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate." 25 F.3d 81, 83 (2d Cir.1994); accord Pinaud v. County of Suffolk, 52 F.3d at 1148 (citing approvingly to Dory's holding that absolute immunity attaches to the prosecutor's advocacy function, "not the manner in which he perform[s]" the function) (citation omitted); see also Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir.1987) (holding that "absolute immunity spares the official any scrutiny of his motives" so that allegations of "bad faith or ... malice [cannot] defeat[] a claim of absolute immunity").
 
 
 35
 Some years ago, the Ninth Circuit had taken a different view on the issue of motive, holding that when a prosecutor, operating under a personal conflict of interest, filed charges that he knew to be baseless, the prosecutor acted outside the scope of his authority and lacked immunity. Beard v. Udall, 648 F.2d 1264, 1271 (9th Cir.1981). Responding to criticism from sister circuits, however, the Ninth Circuit reversed itself in Ashelman v. Pope, 793 F.2d 1072 (9th Cir.1986). In that case, the court ruled that "[i]ntent should play no role in the immunity analysis," and that even self-interested prosecutors are entitled to absolute immunity because the initiation of criminal proceedings is conduct well within the advocative function. Id. at 1078.
 
 
 36
 The Third Circuit reached a similar conclusion in Kulwicki v. Dawson, 969 F.2d 1454 (3d Cir.1992), a case factually analogous to this one, in which a prosecutor was sued under § 1983 for pursuing the malicious prosecution of a former political rival. Ruling that the prosecutor was performing "a core prosecutorial function" when he filed criminal charges against plaintiff, the Third Circuit concluded that any inquiry into his "personal motives" would be "at odds with the Supreme Court's simple functional analysis." Id. at 1464.
 
 
 37
 Indeed, the principle that motive is generally irrelevant to function for purposes of applying absolute immunity is not unique to prosecutorial immunity. The Supreme Court has long held that absolute judicial immunity cannot "be affected by the motives with which ... judicial acts are performed." Cleavinger v. Saxner, 474 U.S. at 200, 106 S.Ct. 496 (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871)). Thus, a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Similarly, an "unworthy purpose" cannot defeat absolute legislative immunity as long as the challenged conduct is even arguably within delegated legislative powers and does not usurp the role of other branches of government. Tenney v. Brandhove, 341 U.S. at 377, 71 S.Ct. 783 (recognizing absolute immunity in connection with state legislative committee hearings); id. at 379, 71 S.Ct. 783 (Black, J., concurring) ("the holding that the [legislators] cannot be sued in this case is not a holding that [they engaged in] legal conduct").
 
 
 38
 Applying these principles to this case, we conclude that, regardless of defendants' political motives, absolute immunity shields them from suit pursuant to § 1983 for their alleged malicious or selective prosecution of plaintiffs, as well as for any misconduct in the presentation of evidence to the grand juries that returned the challenged indictments against plaintiffs. To the extent the district court ruled otherwise, we reverse and remand for the entry of an order dismissing these claims on the ground of absolute immunity.
 
 
 39
 C. This Court Declines to Exercise Pendent Interlocutory Jurisdiction to Decide Whether Plaintiffs' Complaint Adequately Pleads Claims of Investigative Misconduct
 
 
 40
 In an effort to prevent complete dismissal of their complaint on the ground of absolute immunity, plaintiffs assert that the real focus of their pleadings is on defendants' misconduct in the investigation of their criminal cases rather than the subsequent prosecutions. Defendants acknowledge — as they must — that investigative functions, whether performed by a prosecutor or police officer, are shielded only by qualified, not absolute, immunity. See Buckley v. Fitzsimmons, 509 U.S. at 273, 113 S.Ct. 2606; Zahrey v. Coffey, 221 F.3d at 349. Nevertheless, they insist that complete dismissal is appropriate because plaintiffs' complaint fails to state a claim for investigative misconduct.
 
 
 41
 Ordinarily, the sufficiency of pleadings would not be an issue heard on interlocutory appeal. See Hill v. City of New York, 45 F.3d at 663 ("A denial of a motion to dismiss for failure to state a claim is neither a final decision, nor a basis for interlocutory review under Cohen, and is not, standing alone, immediately appealable."). When, as in this case, however, the issue is raised together with one over which the court has interlocutory jurisdiction, "it is within our discretion" to address a nonappealable argument presenting factors that sufficiently overlap with those relevant to the appealable issue. Id. at 664; San Filippo v. U.S. Trust Co. of New York, 737 F.2d 246, 255 (2d Cir.1984) (and cases cited therein). We decline to exercise that discretion here.
 
 
 42
 First, the necessary overlap is not apparent in this case. Defendants' challenge to the district court's denial of absolute immunity requires a determination as to the relevancy of motive in performing authorized advocative functions. By contrast, the parties' sufficiency dispute depends on whether plaintiffs adequately alleged constitutional violations actionable under § 1983. See Hill v. City of New York, 45 F.3d at 664 (declining to exercise pendent appellate jurisdiction because appealable immunity issue did not sufficiently overlap with issue of whether plaintiff had failed to state a constitutional claim).
 
 
 43
 Further, the sufficiency issue may benefit from amendment of the pleadings to clarify the particulars of any investigative misconduct claim. As already noted, the able district judge did not read plaintiffs' complaint to allege an investigative misconduct claim. Rather, after liberally reviewing the pleaded facts, she concluded that plaintiffs' § 1983 claims were for malicious and selective prosecution and conspiracy to commit the same. This construction is hardly surprising. Although the complaint makes general reference to "improper investigations," Complaint at ¶ 87, it carefully avoids charging defendants Dunne, McPartland, or Kelleher with any investigative role in fabricating evidence subsequently used to prosecute plaintiffs.
 
 
 44
 Notably, the complaint does not accuse defendant Dunne of using his various pre-indictment meetings with Dominick Testa to induce this witness to commit perjury. Instead, it alleges that Dunne knew that others had met with Testa for this purpose and that, despite this knowledge, Dunne subpoenaed Testa to the grand jury and there suborned his perjury. As we have frequently observed, the line between advocacy and investigative functions is frequently difficult to draw, see Zahrey v. Coffey, 221 F.3d at 347, but, as a rule, the knowing presentation of perjured testimony to a grand jury, without any prosecutorial involvement in its earlier inducement, rests on the advocacy side of this line, see Pinaud v. County of Suffolk, 52 F.3d at 1149; Hill v. City of New York, 45 F.3d at 661.
 
 
 45
 Similarly, with respect to Detective Kelleher's March 30, 1997 meeting with plaintiff Kluesener, the complaint alleges that, on that occasion, Kelleher admitted the political motivation for plaintiffs' prosecution. But, it pleads no constitutional injury from this particular encounter that would have alerted the district court to an investigative misconduct claim against the police officer separate and distinct from his alleged conspiratorial participation in plaintiffs' malicious and selective prosecutions. The same conclusion pertains to plaintiffs' allegations of defendants' coercion of James Rogers, a witness who apparently never testified against plaintiffs. See Zahrey v. Coffey, 221 F.3d at 348 (holding that creation of fabricated evidence never used against a party causes no constitutional injury).
 
 
 46
 At oral argument before this court, plaintiffs' counsel suggested that the investigative misconduct claim could be clarified through amended pleadings. This is an application best addressed in the first instance by the district court.
 
 
 47
 In short, while it is undisputed that absolute immunity cannot support dismissal of a properly pleaded claim for investigative misconduct, we decline to decide on this interlocutory appeal whether plaintiffs' complaint adequately pleads such a claim. Instead, we dismiss this part of the appeal for lack of jurisdiction without prejudice to the district court's further consideration of the question on remand.
 
 III. Conclusion
 
 48
 To summarize, we hold that a political motive does not deprive prosecutors of absolute immunity from suit for authorized decisions made in the performance of their function as advocates. Accordingly, we reverse the district court's denial of defendants' motion to dismiss the complaint and remand the case for the district court to order dismissal of plaintiffs' claims of advocative misconduct, specifically their claims for malicious and selective prosecution, as well as misconduct in the presentation of evidence to grand juries. To the extent the parties dispute whether claims of investigative misconduct not shielded by absolute immunity would survive such a dismissal order, we dismiss this part of the appeal for lack of jurisdiction without prejudice to the district court's further consideration of the question on remand.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Laura Taylor Swain, District Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [2]
 It appears from the docket sheet that no amended pleadings have been filed with respect to either Suffolk County or Catterson
 
 
 [3]
 The district court further concluded,sua sponte, that defendants were not entitled to dismissal on grounds of qualified immunity, a ruling not challenged on this appeal. See Bernard v. County of Suffolk, No. 01 CV 5403, at 12-13.
 
 
 [4]
 The district court specifically notedDaniels's citation to Clinton v. Jones, 520 U.S. 681, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) in support of this ruling. Nothing in Jones, however, suggests that bad motive in the performance of official functions removes conduct from the scope of absolute immunity protection. Jones holds only that the President of the United States is not entitled to absolute immunity while in office from a suit for damages based on conduct alleged to have occurred before he became president. Id. at 691-94, 117 S.Ct. 1636.
 
 
 [5]
 We note that inDaniels the district court ultimately concluded that there was "no factual support" for plaintiff's race-based claim and awarded summary judgment in favor of defendant. Daniels v. City of Binghamton, 1998 WL 357336, at *6. Because the present case comes before us on a motion to dismiss, we are obliged to view plaintiffs' complaint in the light most favorable to them, and we express no opinion as to the likely merits of their political-motivation claim.