**Sammy CONTES, Thomas R. Walsh, Francis Bedetti III, Robert H. Itzla, Mark Berkery, Michael David Neubarger, and Local 589, International Association of Firefighters, AFL–CIO, Plaintiffs**

v.

**Harold PORR, III, individually, Marilyn Berson, individually, and the City of Newburgh, New York, Defendants.**

No. 02 Civ. 5194 (CM) (MDF).

United States District Court,
S.D. New York.

Nov. 16, 2004.

---

Jane Bilus Gould, Lovett & Gould, White Plains, NY, for Plaintiffs.

Michael K. Burke, Burke, Miele & Golden, LLP, Goshen, NY, David L. Posner, McCabe & Mack, LLP, Poughkeepsie, NY, for Defendants.

## DECISION AND ORDER DISMISSING COMPLAINT AS AGAINST ALL DEFENDANTS

MCMAHON, District Judge.

Before me are objections filed by all parties to the Report and Recommenda-

tion of The Hon. Mark D. Fox, United States Magistrate Judge, who has preliminarily considered a motion for summary judgment filed by defendants. Judge Fox recommended that the motion should be granted in part and denied in part. I conclude that the motion should be granted in its entirety. Accordingly, I accept the report, grant the motion for summary judgment as to all defendants, and direct the Clerk of the Court to close the file.

*The Complaint*

As found by the learned Magistrate Judge, the gravamen of the instant complaint is that Porr, the City Manager of the City of Newburgh, and Berson, who at relevant times was Newburgh's Corporation Counsel, initiated disciplinary charges against plaintiffs (all firemen, and I use that term advisedly) with the Newburgh Fire Department, to retaliate against plaintiffs for supporting Democratic candidates in the 1999 and 2001 elections. Plaintiffs and the union of which they are a member (and of which all six individual plaintiffs were either officers or committee members or officers of the union's associated Benevolent Association) allege that Defendants' conduct violated their First and Fourteenth Amendment rights (Counts I & IV, respectively).

Plaintiffs also allege that Newburgh's Code of Ethics—which mirrors the original Hatch Act of 1939–40—is facially unconstitutional (Count III).[1]

*The Story Behind the Story*

The Report and Recommendation does not include any discussion of what facts in the record are undisputed. The following facts are both material and supported by undisputed *evidence* (as opposed to speculation):

1. Count II in Plaintiff's First Amended complaint, alleging that a December 2000 amendment to the City Charter facially violates the First Amendment, was discontinued by stipulation.

Defendant Harold Porr was the City Manager of Newburgh from January 1992 until April 1999. Porr was rehired (after a change of administration) in January 2000. He was fired again (after another change of administration) in January 2002. (Burke Aff. Ex. D at 7.) Porr is a Republican. (*Id.* at 63.)

Defendant Marilyn Berson was Corporation Counsel for the City of Newburgh from March 2001 until January 2002. (Berson EBT at 26, 150.) Berson is a lifelong Democrat. (*Id.* at 149.)

In 1999, plaintiff Sammy Contes, a Democrat, ran for a seat on the Newburgh Common Council, with the support of the rest of the plaintiffs, including plaintiff union. During the campaign, Contes publicly expressed disagreement with Porr's method of governance, and particularly with his dealings with labor unions. (Burke Aff. Ex. E at 144–45; 291). He lost. (Berg Aff. Ex. 8 at 97.)

At the time of the 1999 election, Porr was employed as the City Administrator of the City of Poughkeepsie (Porr EBT at 12.) He did not participate in any way in the campaign for Newburgh Common Council that year. (Porr EBT at 32.)

On July 9, 2001, Donna Trainor, a dispatcher with the Newburgh Fire Department, sent a letter to Deputy Chief James Merritt of that department, complaining in detail of the harassment of female fire dispatchers by firemen. The letter did not identify the alleged offenders by name. (Burke Aff. Ex. O.)

Deputy Chief Merritt and Acting Chief Morrill referred Trainor's letter to Berson, who was the City's Sexual Harassment Compliance Officer. (Berson EBT at 42–44; Memorandum dated July 11, 2001 from James Morrilli to Marilyn Berson, attaching Memorandum from Donna Trainor (Posner Aff. Ex. J).)

Berson, in turn, reported the letter to Porr, who instructed her to investigate Trainor's allegations and make recommendations.

Berson conducted an investigation after receiving Trainor's letter. She interviewed and received affidavits from Trainor, Hope Jenerose and Trudy Byrnes (all dispatchers). She also spoke with Chief Paden, Deputy Chief Morrill and Assistant Chief Merritt. (Posner Aff. Ex. K.)

At the conclusion of her investigation, Berson wrote a memorandum to Porr, dated August 7, 2001. (Posner Aff. Ex. K) She recommended to Porr that disciplinary charges be brought against the six individual plaintiffs in this action. Two days later, she made the same recommendation to Chief Paden (*Id.* Ex. L)

Porr agreed and on August 10, 2001, charges were brought under Section 75 of the Civil Service Law of the State of New York. (Posner Aff. Exs. 57–62)

The Civil Service Charges were brought 21 months after the November 1999 election and prior to the commencement of the fall 2001 political campaign (*Id.*).

Berson recommended that the female complainants and the accused firemen not work in the same firehouse. Initially, she recommended that the dispatchers (the females) be moved to a different firehouse from the main firehouse. (Posner Aff. Ex. K). When told this was unworkable, she suggested that plaintiffs Walsh, Contes, Neugebauer and Bedetti be assigned away from the main firehouse to another firehouse, where the female complainants did not work. (*Id.* Ex. L).

On August 13, 2001, administrative orders issued by Morrill reassigned Walsh, Bedetti, Berkery, Neugebauer and Contes. (Posner Aff. Ex. 65.)

On August 23, 2001, Itzla, Walsh, Bedetti, Berkery, Neugebauer and Contes were instructed not to come to the Engine No. 1, the main firehouse in Newburgh, while the charges were pending. (*Id.* Ex. 66.)

Union meetings took place at Engine No. 1, so the above instruction meant that Walsh (who was the President of the Union), Contes (the Treasurer), Bedetti (a member of the Negotiating and Grievance Committees) and Neugebauer (Treasurer of the Benevolent Society) could not attend Union meetings unless those meetings were held at another facility.

There is no evidence in this record that anyone prevented the Union from holding its meetings in another firehouse.

In November 2001, the Democrats took control of the Common Council. (56.1 Statement ¶ 34.) Porr was not retained by the new administration, and Berson resigned on January 2, 2002. (56.1 Statement ¶ 34; Berg Aff. Ex. 24.)

Local 589, including the named plaintiffs, supported the Democrats during the 2001 election. (56.1 Statement ¶ 32.)

The new administration dismissed the sexual harassment charges against the six individual plaintiffs. (Berg Aff. Ex. 75.)

## THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ARE GRANTED

### A. Standard for Summary Judgment

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of material fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. 2505.

In this case, defendants are entitled to judgment as a matter of law on their claims of First Amendment retaliation, First Amendment restraint of political speech, and Fourteenth Amendment selective prosecution without regard to the facts.

### B. First Amendment Retaliation Claim

■ To survive a motion for summary judgment on a First Amendment retaliation claim asserted by a public employee under 42 U.S.C. § 1983, plaintiffs must introduce some admissible evidence into the record tending to show that (1) the expression at issue (in this case, support for the Democratic candidates in the 1999

and 2001 elections) was constitutionally protected activity, and (2) the allegedly retaliatory action adversely affected plaintiffs' constitutionally protected expression, and (3) there existed a causal relationship between the constitutionally protected expression and the retaliatory action. *Camacho v. Brandon*, 317 F.3d 153, 160 (2d Cir.2003).

■ Public employees in general have a right to exercise their franchise and to support political candidates, and that right is protected under the First Amendment. (I will discuss below the constitutionally of Newburgh's Code of Ethics and its impact on the exercise of this right). Solely for purposes of this analysis, I will accept the Magistrate Judge's conclusion that the filing of the disciplinary charges and the attendant restrictions on the plaintiffs' behavior *pendente lite* (transfers, exclusion from the main firehouse) were adverse employment actions, because they carried financial penalties in terms of the loss of overtime opportunities.[2]

Nonetheless, I conclude that this claim should be dismissed (1) as to Porr because he is absolutely immune from liability for the acts charged; (2) as to the City of Newburgh because its liability is entirely dependent on Porr's liability, and he is absolutely immune; and (3) as to Berson both because she is entitled to qualified immunity, and because there is no evidence of in the record that her acts, as described above, were motivated by plaintiffs' previous political activity.

**2.** I do not, however, accept the conclusion that plaintiffs' exclusion from the main firehouse adversely impacted their right to attend Union meetings. There is no evidence in the record that plaintiffs were forbidden to attend Union meetings. They were told not to come into a particular firehouse. The record contains no suggestion that Union meetings must be held in that particular facility. The meetings happen to have been held in the facility

### (1) Porr Is Protected By Absolute Immunity, So All Counts Are Dismissed Against Him

In this case, Magistrate Judge Fox concluded that defendant Berson was entitled to absolute immunity and defendant Porr was not. I disagree, on both counts. Under the law of this Circuit and on the undisputed facts of this case, Porr is entitled to absolute immunity and Berson is not.

■ The doctrine of absolute immunity protects public officials who perform "special functions" and deserve absolute protection from damages liability for the performance of those duties. Absolute immunity extends to prosecutors, in their prosecutorial capacity, to executive officers initiating administrative proceedings, and to government attorneys defending or initiating civil suits. *Spear v. West Hartford*, 954 F.2d 63, 66 (2d Cir.1992), *and cases cited.*

*Spear* settled the question of whether City Managers initiating administrative proceedings (which includes Civil Service disciplinary proceedings) are entitled to absolute immunity—they are, under the reasoning of the United States Supreme Court in *Butz v. Economou*, 438 U.S. 478, 515–17, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978):

> ...official performing certain functions analogous to those of a prosecutor should be able to claim absolute immuni-

where plaintiffs (who were officers of the Union) worked, but there is no evidence that plaintiffs—especially Walsh, the President of the Local—could not have arranged to hold Union meetings in another firehouse. Therefore, I do not accept Judge Fox's conclusion that the transfer and "stay out" orders somehow made it impossible for plaintiffs to attend Union meetings.

ty with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution...The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete. *Butz, supra.,* 438 U.S. at 515, 98 S.Ct. 2894, see also, *Aithchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983) and *Spear, supra,* 954 F.2d at 66 (extending *Butz's* absolute immunity to local officials like Porr).

■ In this case, there can be no question that Porr is entitled to absolute immunity for his decision (and the record reveals that it was *his* decision) to initiate administrative disciplinary proceedings against plaintiffs. The Magistrate Judge erred when he concluded that evidence of retaliatory motive (assuming there were such in the record) has any relevance whatever. As Judge Raggi held a few months ago, in *Bernard v. County of Suffolk,* 356 F.3d 495, 502 (2d Cir.2004), absolute immunity is ABSOLUTE—it insulates officials from liability for certain types of acts, even if those acts were undertaken with a malicious motive—or, as was the case in *Bernard* and is allegedly the case here, with a political motive. Absolute immunity is immunity *without any qualification*—that is what distinguishes it from qualified immunity. Where it attaches, no action for damages lies. And it attaches to particular functions, one of which is the preferment of administrative proceedings.

■ Of course, as the Second Circuit has recognized, a defendant engaged in advocative functions will be denied absolute immunity if he acts "without any colorable claim of authority." *Schloss v. Bouse,* 876 F.2d 287, 291 (2d Cir.1989).

However, there is no issue here of Porr's authority to initiate disciplinary proceedings against civil service employees of the City of Newburgh. He did act with colorable claim of authority. Therefore, the First Amendment retaliation claim must be dismissed as against him. I reject the learned Magistrate's recommendation on this point.

### (2) No Liability Lies Against Newburgh

■■ A municipality cannot be held liable for the conduct of its officials in a § 1983 suit under a theory of *respondeat superior.* Rather, such liability can only attach where the action underlying the plaintiff's claim was carried out pursuant to an official policy or custom of the municipality (*Monell v. Department of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)), or where a municipal officer implements a mandated course of action that was deliberately chosen from various alternatives by officers responsible for establishing final policy with respect to the subject matter in question. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (citing *Pembauer v. City of Cincinnati, et al.,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed. 452 (1986)). Plaintiffs' sole basis for asserting Count I liability against Newburgh is Porr's alleged status of chief policymaker for that municipality. However, because Porr is absolutely immune, his immunized conduct cannot be the predicate for holding Newburgh liable. Therefore, Count I is dismissed as against the City of Newburgh as well.

### (3) Count One is Dismissed as against Berson.

### (a) Berson Is Not Entitled To Absolute Immunity

Magistrate Judge Fox ruled in 2003, as part of a decision on a motion for leave to

amend the complaint, that Berson was entitled to absolute immunity, analogizing her functions to those of a prosecutor. (Burke Aff., Ex. S.) No appeal was taken from Judge Fox's decision at that time. Judge Fox reiterated his ruling in his Report and Recommendation of September 7, 2004 (R & R at 12). Plaintiffs now except to Judge Fox's ruling in this regard; Berson, obviously, applauds it. I believe that plaintiffs' exception is well taken.

In keeping with the "functional approach" to absolute immunity, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), I must look at the evidence to determine what function Berson performed in this matter. The issue is whether her actions were "advocative" in nature. *Bernard, supra.*, 356 F.3d at 502 ("Absolute immunity is reserved for officials . . . and persons working under their direction when they function as *advocates* for the state . . . ."). If Berson's activities were limited to investigating and giving legal advice—even if her investigation and advice led to Porr's "advocative" act of initiating disciplinary proceedings against the plaintiff firemen—then she is not entitled absolute immunity, although she might be entitled to qualified immunity. The closest analogy is to a prosecutor, who has absolute immunity for acts committed in the actual initiation of legal proceedings (for example, presenting particular evidence or witnesses before a grand jury, selecting potential defendants and preferring charges), but only qualified immunity for giving legal advice or conducting an investigation.

■ The undisputed evidence demonstrates that Berson, acting in her capacity as Newburgh's Sexual Harassment Compliance Officer, (1) investigated Trainor's charge, and (2) recommended to Porr that he initiate disciplinary proceedings against the six worst offenders (plaintiffs in this action). Berson did not prefer the charge herself; she did not "initiate" the administrative proceeding. In *Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the Supreme Court drew a line of demarcation between investigative and advisory acts, on the one hand, and the act of initiating litigation on the other. It conferred absolute immunity only for the latter, not the former. Furthermore, in *Buckley, supra,* 509 U.S. 273–74, 113 S.Ct. 2606, the Supreme Court drew a distinction between the "advocates role in evaluating evidence and interviewing witnesses as he prepares for trial . . . and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." Berson's actions, conducting an investigation after receiving Trainor's letter and then writing a memorandum to Porr recommending that charges should be brought, fall into the latter category. *Id.* ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.").

### (b) Berson Is Entitled To Qualified Immunity

■ Although Berson is not entitled to absolute immunity, she is entitled to qualified immunity, because no reasonable lawyer/sexual harassment compliance officer in her position would think that she was violating anyone's First Amendment rights by carrying out her investigative and advisory functions in the circumstances of this case.

In deciding the question of qualified immunity, I must accept the plaintiffs' nonconclusory factual allegations as true. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Stephenson v. Doe,* 332 F.3d 68 (2d Cir.2003). However, the plaintiffs are not free to leave out key elements of the story out of their version and have me overlook them.

The key element that plaintiffs leave out of their version of events is the City's receipt of Trainor's letter alleging a rampant pattern of harassment of women dispatchers by Newburgh's firemen. Once that letter crossed Berson's desk, she had little choice but to investigate. Indeed, she was directed by her supervisor (Porr) to do so, and to come back with recommendations. That Porr was acting within the scope of his authority when he directed Berson to investigate and bring him recommendations cannot be doubted; indeed, he is immune from suit for giving this particular order.

On the facts of this case, any reasonable lawyer/compliance officer in Berson's position would have done precisely what Berson did in response to Porr's directive— conduct an investigation, evaluate the evidence, reach some conclusion, and make a recommendation for further action. In fact, no reasonable lawyer in her position would or could have done anything else. The City was required to investigate the serious charges made by the female dispatchers and take action if it appeared that the charges were founded, if only in order to limit its own liability. *Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Berson recognized as much. She also recognized that the City's failure to respond to similar complaints in the past might complicate its legal position. (Burke Aff. Ex. W.)

In the course of her investigation, Berson received affidavits from three female dispatchers complaining of a litany of harassing behavior. The fourth dispatcher refused to complain, but indicated that the behavior complained of was "just the way guys are." (Burke Aff., Ex. W). It is beyond cavil that specific charges of harassment were made against the six named plaintiffs. Although little if any of the behavior complained of in the affidavits

was overtly sexual (such as instances of physical touching or making sexual propositions), Berson worried that repeated acts of harassment directed solely at women could qualify as sexual harassment if they created a hostile work environment in which women felt uncomfortable working. She had reason to worry, for that is the law. *See e.g., Schwapp v. Town of Avon,* 118 F.3d 106 (2d Cir.1997) (finding possible hostile work environment where plaintiff was subjected to 10–12 offensive comments in twenty months); *Valentin v. New York City,* No. 94 Civ. 3911, 1997 U.S. Dist. LEXIS 24059 (E.D.N.Y. Sept. 9, 1997) ("Verbal conduct, such as sexual slurs, persistent comments about a woman's body, the telling of sexually related jokes or boasting about sexual conquests, has been held legally sufficient to sustain a claim of hostile work environment.") (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295, (1993)).

To analogize this situation to that of a police officer, Berson certainly had "probable cause" to recommend the initiation of disciplinary proceedings against plaintiffs, and to give her supervisor the corollary advice to keep the complainants and the plaintiffs separated during the pendency of the disciplinary proceedings—advice that, I dare say, would be given to any employer by any competent employment lawyer. No reasonable lawyer in her position would have done anything differently when faced with Trainor's and the other dispatchers' allegations, and no reasonable lawyer could ever have believed that she was violating anyone's constitutional rights by taking the steps required by law. Therefore, her actions were qualifiedly immune.

**(c) Alternatively, No Evidence Support's Defendant's Claim of Retaliatory Motive**

█ Finally, even if no immunity whatever attached to Berson's investigation and

preparation of the recommendation to Porr, she would still be entitled to summary judgment because there is absolutely no evidence that Berson acted in order to retaliate against plaintiffs for their support of Democratic candidates in 1999.[3]

The plaintiffs' burden is to raise a genuine issue of fact concerning whether there was a causal link between their constitutionally protected participation in the 1999 election and Berson's conduct of her investigation and recommendation that these six firemen be disciplined. They have utterly failed in this endeavor. There is not a scintilla of evidence in the record suggesting that Berson was motivated by anything other than the receipt of a complaint, the results of her investigation and her knowledge of the relevant law. None of the so-called "connective" acts on which plaintiffs rely to create a relationship between their political activity in 1999 and Berson's investigation (which in any event fail to create the connection they desperately try to make) was perpetrated by Berson. In fact, all of them took place before she was hired. Plaintiff's conclusory and speculative allegation that Berson must have conspired with Porr enjoys no evidentiary support, and thus fails to meet the threshold for avoidance of summary judgment. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 53 (2d Cir.2003).

As the Magistrate Judge properly concluded, the only "evidence" plaintiffs introduce against Berson is her August 7 memorandum, in which she states the following:

It is my conclusion that the allegations of harassment are serious and true. *Whether they rise to the level of sexual harassment is not completely clear.* Many of the more sexual-related incidents occurred too long ago to raise in the charges. Nonetheless, since these women must endure a hostile work environment, I think it is valid to allege that the officers' acts constitute both harassment and sexual harassment. Under any circumstances, the conduct of these officers is disgraceful. Swift and serious actions must be taken. The City may well be facing liability, since, as we have discussed, these complaints have been voice to Paden, Merritt and Morrill and little if any action has resulted. The conduct of the officers has not improved. The women, not surprisingly, don't expect much support from us.

(Burke Aff., Ex. W. (emphasis added)) Plaintiffs argue that the above italicized sentence evidences malice on Berson's part, which could lead a jury to infer that she was acting with Porr for political reasons.

To have attorneys who have represented plaintiffs in sexual harassment cases before this court, and who are well aware of the law on what constitutes sexual harassment, make this argument is, frankly, offensive. As noted above, acts that are not overtly sexual can, in certain circumstances but not in all circumstances, constitute sexual harassment. The italicized language in Berson's memo is susceptible of but one interpretation: it is a lawyerly expression of caution about the parameters of a charge of "sexual harassment" in a case where harassing actions that are no overtly sexual have been directed at members of one sex and not the other. No reasonable reader of this paragraph could draw from this sentence any inference that Berson was making her recommendation to retaliate against the plaintiffs' exercise

---

**3.** It is undisputed that the 2001 election campaign had yet to begin when Berson acted in August 2001, so plaintiffs' support for particular candidates in that election cycle could not have motivated the action of Berson and Porr.

of their First Amendment rights, or for any other malicious reason.

■■■ Finally, as a matter of law in this Circuit, retaliation will not be inferred when a long period of time passes between the exercise of a First Amendment right (protected conduct) and the imposition of the allegedly retaliatory adverse employment decision. *Clark County School District v. Breeden*, 532 U.S. 268, 273–4, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (2001), *cf. Taylor v. Potter*, No. 99 Civ. 4941, 2004 WL 1811423 at *20–21, 2004 U.S. Dist. LEXIS 15992, at *70–71 (S.D.N.Y. Aug. 16, 2004) (finding that an eight-month gap is insufficient to establish a causal connection between Plaintiff's EEO complaint and his seven-day suspension following a separate incident); *Dodson v. CBS Broadcasting, Inc.*, No. 02 Civ. 9270, 2004 WL 1336231 at *23 n. 27, 2004 U.S. Dist. LEXIS 10787, at *76 n. 27 (Jun. 15, 2004) ("The eight months between [plaintiff's] complaint to [his supervisor] and his termination is not the 'very close' proximity sufficient to raise an inference of causality."); *Diaz v. Weill Med. Ctr. of Cornell Univ.*, No. 02 Civ. 7380, 2004 WL 285947 at *7–8 & 22 n. 31, 2004 U.S. Dist. LEXIS 2054, at *22 & 78 n. 31 (Feb. 13, 2004) (finding no causation where six months elapsed between plaintiff's DHR complaint and her termination); *Gross v. NBC*, 232 F.Supp.2d 58, 74 (S.D.N.Y.2002) (intervening 13–month period between plaintiff's protected activity and the alleged retaliation too temporally remote to support a retaliation claim); *Clarke v. City of New York*, No. 98 Civ. 3715, 2001 WL 876926, at *7 (E.D.N.Y. Aug 1, 2001) (finding that plaintiff could not establish a temporal link between his speech and reassignment which occurred six months apart to two years apart); *Cooper v. Morgenthau*, No. 99 Civ. 11946, 2001 WL 868003 at *3, 2001 U.S. Dist. LEXIS 10904, at *8 (S.D.N.Y. July 31, 2001) (dismissing retaliation claim where adverse action occurred seven months after protected activity); *Cobian v. City of New York*, No. 99 Civ. 10533, 2000 WL 1782744, 2000 U.S. Dist. LEXIS 17479 (S.D.N.Y. Dec. 6, 2000) (holding that plaintiff failed to establish causal connection between protected activity and adverse employment action which took place after four-month lag); *James v. Newsweek*, No. 96 Civ. 0393, 1999 WL 796173, 1999 U.S. Dist. LEXIS 15588 (S.D.N.Y. Sept. 30, 1999) (no causation where "there was at least a four-month gap between the protected activity and the adverse actions"), *aff'd mem.*, 213 F.3d 626 (2d Cir.2000), *cert denied*, 531 U.S. 926, 121 S.Ct. 303, 148 L.Ed.2d 243; *Castro v. Local 1199, Nat'l Health & Human Servs. Employees Union*, 964 F.Supp. 719, 728 (S.D.N.Y.1997) (one year is too long to show causal connection between filing of EEOC complaint and termination).

Here, the protected conduct was political expression in 1999 and the allegedly retaliatory act took place 21 months later, immediately after the occurrence of a "red flag" intervening act—the filing by Trainor and her colleagues of formal complaints of sexual harassment. In the absence of direct evidence that plaintiffs' 1999 political activity motivated the ensuing investigation and charges (and there is no such evidence), the retaliation claim must be dismissed, because too much time passed to support a cause-and-effect conclusion and an intervening event occurred. *See e.g., Lambert v. New York State Office of Mental Health*, No. 97 Civ. 1437, 2000 WL 574193 at *5, 2000 U.S. Dist. LEXIS 5197, at *13 (E.D.N.Y. Apr. 24, 2000) (in light of intervening circumstances, five months was too great a time period to establish retaliation for EEOC complaint); *see also Tenkku v. Normandy Bank*, 348 F.3d 737, 742 (8th Cir.2003) (affirming summary judgment where intervening unprotected

events eroded any causal connection between plaintiff's protected conduct and the adverse employment actions); *Smith v. American Airlines Inc.*, No. 99 Civ. 6447, 2001 WL 710108 (N.D.Ill. Jun.22, 2001) (holding that Court must also look to "any intervening cause that breaks the causal chain").

There is no evidence in this record that plaintiffs engaged in any political activity directed toward the 2001 campaign prior to early August 2001, when the events in suit occurred, let alone that Berson was aware of any such activity. Therefore, no reasonable jury could conclude that Berson's investigation and recommendations were motivated by anything relating to the 2001 campaign.

I therefore accept the Magistrate Judge's recommendation that Berson be granted summary judgment dismissing the First Amendment retaliation claim.[4]

## C. Fourteenth Amendment Selective Prosecution Claim

Count Four accuses Porr (and, under *Pembaur*, the City of Newburgh) of engaging in selective prosecution, in that Porr filed charges against the named plaintiffs but not others who allegedly engaged in offensive conduct toward the female dispatchers.[5] They identify Assistant Chief Ferguson as the principal culprit who was implicated but not charged.[6]

■ For the reasons stated above, this claim, too, must be dismissed against Porr

and the City of Newburgh. Plaintiff's equal protection claim is premised on their First Amendment claim. The First Amendment claim does not survive the defendants' motion for summary judgment because Porr is entitled to absolute immunity. Therefore, their equal protection claim likewise fails. *See Larsen v. Lynch,* 1998 WL 229919, *5 (Conn.1998).

Berson is not a defendant on this count because Judge Fox denied plaintiff's motion to add Berson on the ground that she was absolutely immune. In fact, as discussed above, Berson was entitled only to qualified immunity, not absolute immunity. However, Plaintiff did not timely appeal the motion to this count, so Berson's non-party status is res judicata. *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 400 (2d Cir.1997). In any event, no harm arises from this error, because the record contains absolutely no evidence that Berson selected whom to recommend for prosecution based on political affiliation. Therefore, if she were a defendant in this claim, I would grant her summary judgment on the merits on this issue.

## D. The Constitutionality of the Newburgh Code of Ethics

Count III alleges, in substance, that the Newburgh's Code of Ethics is unconstitutional.

■ The Complaint asserts this claim against Porr, Berson, and the City of Newburgh. However, neither Porr nor Berson

---

4. I agree with Magistrate Judge Fox that the Union lacks standing to pursue a claim for damages for the filing of the sexual harassment charges against the six plaintiffs. That said, since Porr—the person who filed the charges—is absolutely immune, the Union has no one against whom to assert the claim. As noted in Note 2 above, nothing in this record indicates that Berson forbade the plaintiffs from attending Union meetings—all the Un-

ion had to do was move its meetings to a different fire house while charges were pending against its officers.

5. Plaintiff's First Amended Complaint does not make this claim against Berson.

6. Berson concluded that Ferguson and an eighth fireman, Carpenter, should receive warning letters. (Burke Aff. Ex. W)

currently works for the City, and neither was a member of the City Council when that body enacted the Code. They recommended the bill to the Council, but it does not violate anyone's constitutional rights to recommend a piece of legislation. Porr and Berson are not proper parties defendant on this claim, and it is dismissed as against them.

As to the claim against Newburgh, the undisputed facts demonstrate the following:

On September 24, 2001, the Newburgh City Counsel passed a Code of Ethics which restricted officers or employees of the city from participation in political activities. (Burke Aff., Ex. Z.)

The statute—which mirrors the original Hatch Act of 1939–40—reads as follows:

No City Officer of Employee shall:

(i) direct or cause any officer or employee of the City to do or perform any service or work outside of public work or employment, or accept any such service or work, nor shall any such officer or employee offer to perform any such service or work for such officer or employee, including participation in an election campaign or contribution to a political committee.

While inelegantly phrased, the Code prohibits City employees from:

"directing or causing" any other City employee to do anything except the job the City is paying them to do;

offering to perform any service or work for any other City employee, including specifically offering to work on or contribute to another City employee's political campaign.

**7.** The original Hatch Act of 1939–40 read:

An employee in an Executive agency or an individual employed by the government of the District of Columbia may not—

■ I agree with Judge Fox's conclusion that this statute is facially constitutional. The Newburgh statute is narrower than the original Hatch Act, which prohibited federal employees from taking "an active part in political management or in political campaigns," 5 U.S.C. § 7324(a)(2).[7] It does not prohibit Newburgh employees from participating in or contributing to all political campaigns— just those of fellow city workers.

The Supreme Court has addressed constitutional challenges to the original Hatch Act, which prohibits or restricts federal employees from holding office or engaging in many political activities, and has also addressed such challenges to state statutes patterned after the Hatch Act. The court has consistently held that neither holding political office nor engaging in political activity is a fundamental right, and that certain restrictions upon such political activity for government employees are constitutional. *United States Civil Service Comm. v. National Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (addressing claims by federal employees and finding the § 7234(a)(2) to be neither unconstitutionally vague nor overbroad); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (addressing similar claims by state employees).

Although the Hatch Act has since been amended, this does not render the constitutionality of the original Act suspect. The principles underlying the decisions that upheld its constitutionality—that government employees do not have an absolute right to participate in political activi-

(1) use his official authority or influence for the purpose of interfering with or affecting the result of an election; or

(2) take an active part in political management or in political campaigns.

ties, and that the legislature is entitled to some leeway in determining which employment positions required restrictions on partisan political activities—are equally applicable today. *See e.g., Horstkoetter v. Dep't of Public Safety,* 159 F.3d 1265, 1272 (10th Cir.1998) (finding statute prohibiting highway patrolmen from taking part in or contributing to political campaigns constitutional); *Wilhite v. Fordice,* No. 3:99 Civ. 17–B, 1999 WL 33505544, 1999 U.S. Dist. LEXIS 13441 (D.Miss. Jun.24, 1999) (holding that a statute prohibiting state law enforcement employees from any political activity did not infringe on petitioners' constitutional rights).

If the original Hatch Act is constitutional, then the more narrowly tailored provision in the Newburgh Code of Ethics necessarily passes constitutional muster. Thus, the allegations contained in Count III are without merit and are dismissed.

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

This constitutes the decision and order of the Court. The Clerk of the Court is directed to close the file.