**D.F., by his Parent and Natural Guardian, Andrew Finkle, Plaintiff,**

v.

**BOARD OF EDUCATION OF SYOSSET CENTRAL SCHOOL DISTRICT; James Kassebaum, Both Individually and in His Capacity as Principal of the Harry B. Thompson Middle School; and Carole G. Hankin, Both Individually and in Her Capacity as Superintendent of the Syosset Central School District, Defendants.**

No. CV–04–4251.

United States District Court, E.D. New York.

Sept. 12, 2005.

E. Christopher Murray, Reisman, Peirez & Reisman, L.L.P., Garden City, for Dylan Finkle.

Peter J. Biging, Lewis, Brisbois, Bisgaard & Smith, LLP, New York City, for Board o Education Of Syosset Central School District.

A. Kathleen Tomlinson, Farrell Fritz, P.C., Uniondale, NY, for Dr. Carole G. Hankin.

## MEMORANDUM AND ORDER

PLATT, District District Judge.

Before this Court is the Board of Education of Syosset Central School District ("Board of Education"), James Kassebaum ("Kassebaum"), and Carole G. Hankin's ("Hankin"), (collectively "Defendants"), motions to dismiss Plaintiff D.F.'s ("Plaintiff" or "D.F.") amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Defendants move

---

1. Defendant Hankin moves separately from the Board of Education and Kassebaum, however the only individualized claim is the defamation claim against Kassebaum.

to dismiss, claiming there has been no violation of: Plaintiff's right to freedom of speech under the First Amendment, Plaintiff's right to procedural or substantive due process under the Fifth and Fourteenth Amendments, Plaintiff's right to equal protection under the Fifth and Fourteenth Amendments, Plaintiff's right to be free from unreasonable search and seizure under the Fourth Amendment, Plaintiff's rights under New York Public Health Law § 2504, or Plaintiff's rights under the New York State Constitution. Defendants also move on the ground that a suit for damages under 42 U.S.C. § 1983 is barred by the Eleventh Amendment, and that they are protected by qualified immunity. Defendant Kassebaum joins in the Defendants' motion and additionally moves to dismiss the defamation claim against him.

**For the following reasons, Defendants' motion to dismiss is GRANTED as to all of Plaintiff's claims.**

### Factual Background

Plaintiff D.F. is a 12 year-old boy who brings this suit by his parent and guardian, Andrew Finkle. The case arises from the following events. At the start of the 2003–2004 school year, Philip Kaiser ("Kaiser"), Plaintiff's English teacher, assigned his sixth grade students to keep a long-term journal "expressing thoughts, concerns, or feelings." (Am.Compl.¶ 9) Kaiser told the students that they could utilize such forums as poems or short stories. (Am.Compl.¶ 10) As part of his journal assignment, Plaintiff wrote the fictional story entitled, "Costume Party," which he says is modeled after the horror movie *Halloween*. (Def. Hankin's Mem. Dis. at 2) The story involved a boy named "Dylan," a horror movie fan who was bullied by other children at school and desired revenge. (Def. Hankin's Ex. B) In the third chapter of the story, Dylan, wearing a costume similar to that worn by the villain in *Halloween*, stabs a boy named "Matt Cohen"

(described as a "mean kid") in the head. (*Id.*) Dylan then goes on a killing spree, stabbing other "bad kids." (*Id.*) At one point in the story a female student is described kissing a boy with her shirt off. (*Id.*) Dylan later walks in on this same girl while she is engaging in intercourse with another student, and chops off the girl's head with an axe. (*Id.*) Some of the characters in the story were named after actual students with whom Plaintiff went to school. (Am.Compl.¶ 15) Plaintiff had no prior disciplinary record at the time of writing the story. (Am.Compl.¶ 16)

On October 3, 2003, Kaiser arrived late to class and found Plaintiff reading the story to the other students in the class. (Am.Compl.¶ 17) Kaiser first asked Plaintiff to sit down, but then allowed him to continue reading the story because he was preoccupied with checking attendance. (*Id.*) The same day, while Plaintiff was at a voluntary program called "Latin at Lunch," Plaintiff asked permission to read his story to the other approximately sixteen (16) students present. (Am. Compl.¶ 21) The instructor, Ms. St. Johns ("St.Johns"), requested that she read the story to herself first. (Def. Hankin's Mem. Dis. at 3) St. Johns was disturbed by the story, and brought the story to Principal Kassebaum. (*Id.*) Kassebaum then suspended Plaintiff for five (5) days (Am. Compl.¶ 26) and sent a notice to Plaintiff's parents informing them of the dates of the suspension. (Am.Compl.¶ 28) The day before the suspension was to begin, however, Plaintiff was not allowed to attend his classes. (Am.Compl.¶ 29) Also, at the direction of the School District and Kassebaum, a school psychiatrist performed a number of psychological tests on Plaintiff. (*Id.*) Plaintiff's parents were neither informed of nor given the opportunity to consent to the psychological testing. (Am. Compl.¶ 30) According to the complaint, on October 8, 2003, Kassebaum communicated

with the parents of two (2) other students and told them that Plaintiff had engaged in "threatening behavior" towards their children and "harassment of a deviant sexual nature." (Am.Compl.¶ 32)

On October 21, 2003, after the five-day suspension, a Superintendent's hearing was held. (Am.Compl.¶ 37) At the hearing, the School District alleged three (3) violations of the School District's Code of Conduct: (i) threatening the use of a weapon, (ii) harassment, and (iii) intent to intimidate or threaten other students. (*Id.*) Plaintiff's parents were informed beforehand that a Superintendent's Hearing would be held. (Am.Compl.¶ 35) According to the complaint, Plaintiff's parents had notice of all of the charges except for the harassment charge. (Am.Compl.¶ 37) The School District chose Sharon Berlin, Esq. ("Berlin") as the Hearing Officer. (Am.Compl.¶ 38) Berlin was an attorney with Rains & Pogrebin, P.C., a firm routinely hired by the School District. (Am. Compl.¶ 39)

At the hearing, no students testified to being threatened or harassed by Plaintiff. (Am.Compl.¶ 47) However, the School District introduced-over the objection of Plaintiff's attorney-statements from students describing their reaction to Plaintiff's story. (Am Compl. ¶ 50) The students who made the proffered statements were never identified and Plaintiff's attorney was never permitted to question these students. (Am.Compl.¶ 51) Kaiser, St. Johns, Kassebaum, Ms. Grenzig, the Assistant Principal, and Plaintiff's parents all testified at the hearing. (Def. Hankin's Mem. Dis. at 4) Berlin concluded that Plaintiff's "story was designed to place individuals in fear of bodily harm" and Plaintiff, through his story, was guilty of "threatened use and/or contemplated use of a weapon in violation of the Code of Conduct." (Def. Hankin's Ex. D at 200–202) Berlin recommended sustaining all

three (3) charges brought against Plaintiff and that Plaintiff be suspended from school for thirty (30) days. (Am. Compl.¶ 54) Hankin followed the recommendation and subsequently suspended Plaintiff for thirty days. (Am.Compl.¶ 59)

Plaintiff alleges violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. Plaintiff also brings claims for violation of New York Public Health Law § 2504, and the Constitution of the State of New York. Plaintiff brings a State law claim for defamation against Defendant Kassebaum. Lastly, Plaintiff brings a claim for damages under 42 U.S.C. § 1983.

## Procedural Background

Plaintiff appealed the thirty-day suspension by letter to the School Board, dated October 28, 2003. The School Board denied the appeal. Plaintiff then appealed the decision to the Commissioner of Education, who also denied the appeal. On October 1, 2004, Plaintiff filed a complaint in this court and on March 3, 2005 filed an amended complaint. On July 18, 2005, Defendants filed a motion to dismiss the amended complaint. Oral argument was heard on the motion on July 28, 2005, and decision was reserved.

## Discussion

"A dismissal under Rule 12(b)(6) is a dismissal on the merits of the action-a determination that the facts alleged in the complaint fail to state a claim upon which relief can be granted." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d cir.1996). A district court should deny a motion to dismiss for failure to state a claim under 12(b)(6) "unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court must con-

fine itself to a consideration of the facts that appear on the face of the complaint. *Ryder,* 748 F.2d at 779.

The Court may dismiss the complaint for lack of subject matter jurisdiction under 12(b)(1) if it lacks the statutory or constitutional power to adjudicate the case. *Nowak,* 81 F.3d at 1187. The standards for dismissal under 12(b)(6) and 12(b)(1) are virtually identical. *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir. 2003) (*citing Moore v. PaineWebber, Inc.,* 189 F.3d 165, 178–179 (2d Cir.1999)). The only practical distinction is that "the party invoking the jurisdiction of the court has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the defendant has the burden of proof." *Lerner,* 318 F.3d at 128 (*citing Thompson v. County of Franklin,* 15 F.3d 245, 248 (2d Cir.1994)).

The defamation claim against Kassebaum is the only claim that is specific to any single Defendant. Therefore, the analysis of all the other claims applies to all Defendants.

## I. *First and Fourteenth Amendment Freedom of Speech Claim*

 Plaintiff alleges that his First Amendment right to freedom of speech was violated when he was suspended solely because Defendants disagreed with the content of his journal. Freedom of speech, however, is not an unfettered right for any U.S. citizen. Speech that constitutes a true threat of violence, by being a "serious expression of an intent to cause present or future harm," may be prohibited. *Porter v. Ascension Parish Sch. Bd.,* 393 F.3d 608, 616 (5th Cir.2004). The speaker of a true threat does not even need to have the intention of carrying out the threat. *Virginia v. Black,* 538 U.S. 343, 359–360, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). The prohibition on true threats is meant to "protect individuals

from the fear of violence, the disruption that fear engenders, and the possibility that the threatened violence will occur." *R.A.V. v. St. Paul,* 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic." *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919). Moreover, a student like Plaintiff possesses even less free speech rights. It is well established that school administrators have the right to prohibit speech that "materially or substantially interferes with the requirements of appropriate discipline in the operation of the school," or that "would substantially interfere with the work of the school or impinge upon the rights of other students." *Smith v. Mount Pleasant Pub. Sch.,* 285 F.Supp.2d 987, 993 (E.D.Mich. 2003); *Tinker v. Des Moines Indep. Comty. Sch. Dist.,* 393 U.S. 503, 509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In addition, a school may prohibit student speech that is inconsistent with its "basic education mission," even though the same speech may not be prohibited outside the school. *Bethel Sch. Dist. v. Fraser,* 478 U.S. 675, 685, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Speech that is vulgar or school-sponsored (where a listener would assume that the writing or statements are made on behalf of the school) may also be restricted. *Smith,* 285 F.Supp.2d at 994; *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988).

 In this case, Plaintiff's story is speech that would not be protected in the school setting. Plaintiff, as a minor and a student, is not entitled to unbridled First Amendment protection in the school setting. *Bethel Sch. Dist.,* 478 U.S. at 685, 106 S.Ct. 3159. The story, with its graphic depictions of the murder of specifically named students and sex between named

students, may materially interfere with the work of the school by disturbing the students and teachers. For example, at one point in the story, the murderer kicks a girl named "Shanna" in the mouth and Shanna responds by kissing the murderer while blood is "pouring out of her mouth." (Def. Hankin's Ex. B) Further, the story constitutes a true threat of violence as it describes a student killing other real-life students. This Court is well aware of the legacy of fear and panic that recent acts of devastating school violence have wrought in this country. Schools must be able to protect their student bodies against such acts and be able to provide a modicum of security for their parents and students. Consequently, Plaintiff's story is not entitled to First Amendment protection, and thus the motion for dismissal as to the freedom of speech claim is granted.

## II. *Due Process Claims*

### A. Procedural Due Process Violation

■ Plaintiff's claim of procedural due process is primarily based on three (3) allegations: (i) he received no notice of the harassment charge prior to the Superintendent's Hearing, (ii) the Hearing Officer was biased, and (iii) Plaintiff's attorney was prevented from cross-examining witnesses at the hearing. An analysis of whether procedural due process has been afforded generally involves consideration of the following three factors: "(i) the private interest that will be affected by the official action, (ii) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (iii) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As to the first factor, a

student has a constitutionally protected property interest in education, "which may not be taken away for misconduct without adherence to the minimum procedures required by [the Due Process] Clause." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

■ This Court is mindful, however, that in school disciplinary hearings, "students are not entitled to the procedural protections of a criminal trial." *Board of Educ. of Monticello Cent. Sch. Dist. v. Commr. of Educ.*, 91 N.Y.2d 133, 139–40, 667 N.Y.S.2d 671, 690 N.E.2d 480 (N.Y. 1997). Rather, New York Education law provides for certain, basic procedural protections for suspensions longer than five (5) days such that the "pupil and the person in parental relation to such pupil shall have had an opportunity for a fair hearing, upon reasonable notice, at which time such pupil shall have the right to representation by counsel, with the right to question witnesses against such pupil and to present witnesses and other evidence on his behalf..." N.Y. Educ. Law § 3214(3)(c) (McKinney 2005). Other than these broad parameters, New York Education Law § 3214 does not specify the manner in which the hearing must be conducted.

Here, Plaintiff alleges that he received no notice of the harassment charge prior to the hearing. According to the New York Court of Appeals, a student is entitled to advance notice of the charges that will be levied against him or her at the suspension hearing, "sufficiently specific to advise the student and his counsel of the activities or incidents which...will form the basis for the hearing." *Board of Educ. of Monticello Cent. Sch. Dist.*, 91 N.Y.2d at 140, 667 N.Y.S.2d 671, 690 N.E.2d 480. The notice that Plaintiff received, however, is sufficiently specific so as to advise him of the charges that form the basis of the hearing. Plaintiff was informed of two of

the three charges lodged against him and he was aware of the underlying activity— the story he wrote—from which the charges arose. Thus, there was no risk of erroneous deprivation of Plaintiff's interest in education through the notice given, and there would be little or no probable value of any additional notice.

Plaintiff also alleges that Berlin, the Hearing Officer, was biased because she worked for a firm that was routinely hired by the School District. This allegation does not constitute a cognizable deprivation of due process because New York education law grants the superintendent the authority to appoint the hearing officer. N.Y. Educ. Law § 3214(3)(c). Plaintiff's final allegation is that the hearing was not procedurally proper because his counsel was not permitted to interview the students who provided written statements. It is true that New York Education law provides Plaintiff with the "right to question witnesses against [him] and to present witnesses and other evidence on his behalf." N.Y. Educ. Law § 3214(3)(c). In this case, however, the School's interest in protecting the identities of the students outweighed any interest in cross-examination of them the Plaintiff may have had. Overall, Plaintiff was afforded the procedural protections to satisfy his due process rights; he was given a hearing, given sufficient notice of the hearing, and permitted to present a defense of his behavior with counsel. He offered his own parents to testify on his behalf. On the other side of the balance sheet, the School District had a keen interest in keeping the identity of the students confidential. The School District reasonably considered Plaintiff to be potentially violent, and by not disclosing the names of the students the School District was protecting them from possible retaliation by Plaintiff. Thus, on balance, the motion for dismissal as to the claim of procedural due process violation is granted.

### B. Substantive Due process Violation

Plaintiff's claim of substantive due process is based on allegations that the thirty (30) day suspension was excessive and arbitrary and capricious. The right to due process may be violated substantively, regardless of procedural fairness. *County of Sacramento v. Lewis,* 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "Substantive due process protects against governmental action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against governmental action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (*quoting Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (*quoting Collins v. Harker Heights,* 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). The Supreme Court has "repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Tinker,* 393 U.S. at 507, 89 S.Ct. 733.

Plaintiff's claim that the thirty-day suspension violated substantive due process because it was excessive and arbitrary and capricious is without merit. The decision to suspend Plaintiff for thirty (30) days was within the Defendants' discretion. Plaintiff wrote a story that depicted a student stabbing his classmates to death,

and this conduct clearly warranted serious disciplinary action. A suspension for thirty days is not so egregious as to warrant this Court's intervention in the School's affairs. A student might easily miss thirty days of school as the result of illness. Thus, the motion to dismiss the substantive due process claim is granted.

### III. *Equal Protection Claim*

■ Plaintiff claims violation of his right to Equal Protection based on allegations that he was selectively-treated compared to other students. In a claim for selective enforcement, the Plaintiff must allege that "(i) compared with others similarly situated, was selectively treated; and (ii) that such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir.2000). Conclusory allegations of selective treatment may not survive a motion for dismissal. *Albert v. Carovano*, 851 F.2d 561, 572, 573–74 (2d Cir.1988). In order to state a claim for selective enforcement, the Plaintiff must specify instances in which he was " 'singled . . . out for unlawful oppression.' " *Id.* (*quoting Birnbaum v. Trussell*, 347 F.2d 86, 90 (2d Cir.1965)).

■ In support of his selective treatment claim, Plaintiff alleges that "upon information and belief, other students attending middle school within the School District who engaged in similar or more severe conduct, including actual threats of violence, received suspensions of a lesser duration than D.F.'s." (Am.Compl.¶ 60) Plaintiff, however, fails to identify any similarly situated individual, or any set of facts in support of his allegations of disparate treatment. Plaintiff's allegations of selective treatment are wholly conclusory, and such conclusory allegations of selective treatment are insufficient to defeat a motion to dismiss. *Albert*, 851 F.2d at 572, 573–74. The motion for dismissal as to the claim for selective treatment is granted.

### IV. *Fourth Amendment Unreasonable Search and Seizure Claim*

■ Plaintiff alleges that subjecting Plaintiff to psychological testing without his parents' consent violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution. The Fourth Amendment prohibition of unreasonable searches and seizures "applies to governmental action," and "activities of sovereign authority." *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). School officials, however, are allowed greater latitude in their searches of students. *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). A search is justified when there are "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341–42, 105 S.Ct. 733. This standard honors the viable interest that educators have in 'maintaining security and order' in their schools. *Id.* at 340, 105 S.Ct. 733.

■ Defendants, as school officials, are under a lesser degree of scrutiny in connection with the search and seizure of students. *New Jersey*, 469 U.S. at 340, 105 S.Ct. 733; *Wofford v. Evans*, 390 F.3d 318, 326 (4th Cir.2004). Defendants were justified under the Fourth and Fourteenth amendments in testing Plaintiff. Plaintiff's story, with its graphic depictions of a child brutally murdering his classmates, gave Defendants reasonable grounds for fearing that Plaintiff might carry out the acts he described. Defendants acted within the discretion granted them by the Fourth and Fourteenth Amendments in testing Plaintiff because it was reasonable

to believe that he was capable of violent acts toward his fellow students. Thus, the motion to dismiss the claim for violation of the Fourth Amendment based on the psychological testing is granted.

### V. *New York Public Health law § 2504 Claim*

 Plaintiff alleges that subjecting him to psychological testing without his parents' consent also violated New York Public Health Law § 2504. Under New York law, parental consent is required for the administering of "medical, dental, health and hospital services" to a child. *Alfonso v. Fernandez*, 195 A.D.2d 46, 51, 606 N.Y.S.2d 259 (N.Y.App.Div.1993). Section 2504, however, carves out a few limited exceptions to the parental consent rule-none of which the Plaintiff fits. N.Y. Pub. Health Law § 2504 (2005) (dispensing with parental consent requirement for persons over eighteen years of age, who have married or borne a child, who are pregnant, or in the case of a medical emergency).

Defendants concede that psychological testing was administered to Plaintiff without his parents' consent, but they argue that the psychological testing was not a "health service" within the meaning of the statute and the School was not obligated to receive parental consent. (Defs. Bd. of Educ. and Kassebaum's Mem. Dis. at 21) The statutory definition of "health service" contradicts the Defendants' argument, however, because it includes "procedures designed to determine the health status of the child." 8 NYCRR § 136.1(d) (2005). The psychological testing was administered by the school psychiatrist, and was for the purpose of determining Plaintiff's mental health, or "psychological state" as Defendants refer to it. (Defs. Bd. of Educ. and Kassebaum's Mem. Dis. at 21) The psychological testing performed on Plaintiff without his parents' consent thus falls within the realm of a "health service."

Plaintiff alleges facts sufficient to state a claim for relief for violation of New York Public Health Law § 2504 as he was subjected to the psychological testing without the consent of his parents. However, the motion to dismiss the claim for violation of New York Public Health Law § 2504 is ultimately granted due to qualified immunity, discussed below.

### VI. *Violation of New York State's Constitution*

Plaintiff alleges that "Defendants' conduct violated rights secured by the Constitution of the State of New York." (Am. Compl.¶ 90) This one sentence constitutes the entire sum and substance of Plaintiff's claim for violation of the New York constitution. Plaintiff fails to allege violations of any specific provisions of the Constitution of the State of New York, in either the Amended Complaint or in other Court submissions. Thus, the claim for violation of rights under the Constitution of the State of New York is insufficiently pled and the motion to dismiss is granted as to this claim without prejudice to re-plead.

### VII. *The Defamation Claim against Kassebaum*

 Plaintiff alleges that Defendant Kassebaum made false and defamatory statements about Plaintiff. In particular, Plaintiff points to Principal Kassebaum's statements to parents of students named in the story that Plaintiff had engaged in "threatening behavior" and "harassment of a deviant sexual nature." A defamation claim directed at spoken words is a claim for slander. *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir.2001). To prove slander under New York law, Plaintiff must show (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either

causing special harm or constituting slander per se, and (vii) not protected by privilege. *Id.* at 265–266. Qualified privilege is a defense to a defamation claim. *Boyd v. Nationwide Mutual Insurance Co.,* 208 F.3d 406, 409 (2d Cir. 2000). "Good faith communications of a party having an interest in the subject, or a moral or societal duty to speak, are protected by a qualified privilege if made to a party having a corresponding interest or duty." *Id.* at 409–410 (*quoting Zeevi v. Union Bank of Switzerland,* 1993 WL 148871, at *3, 1993 U.S. Dist. LEXIS 5760, at *6 (S.D.N.Y. 1993)).

■■■ Kassebaum's statements, that Plaintiff engaged in "threatening behavior" and "harassment of a deviant sexual nature," are certainly truthful in regards to those students whose names appear in the story. Plaintiff depicted his classmates being brutally murdered and participating in sexual acts with one another. The students whose names were used in these depictions were clearly the subjects of "threatening behavior" and "harassment of a deviant sexual nature." Further, Kassebaum is protected by qualified privilege. Kassebaum, as principal, had a duty to speak to the parents of the children whose names appeared in the story, given the threatening and harassing nature of the story. Thus, the motion for dismissal is granted as to Plaintiff's defamation claim against Kassebaum.

VIII. *Violation of § 1983*

■■■ Plaintiff brings a claim for damages under 42 U.S.C. § 1983 based on the alleged violations of his constitutional rights. In order to state a claim for violation of 42 U.S.C. § 1983, (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994). A motion to dismiss for failure to state a claim turns on whether plaintiff has adequately alleged constitutional violations actionable under § 1983. *Hill v. City of New York,* 45 F.3d 653, 664 (2d Cir.1995).

"The Eleventh Amendment bars suit in federal court against a state official in his official capacity where the claim is that the official violated state law in carrying out his duties, and the relief sought would operate against the state." *Takeall v. Ambach,* 609 F.Supp. 81, 84 (S.D.N.Y.1985); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "There is no cause of action for damages under 42 U.S.C. § 1983 against a school board or its members in their official capacities." *Seils v. Rochester City School District,* 192 F.Supp.2d 100, 122 (W.D.N.Y.2002), *aff'd,* 99 Fed. Appx. 350 (2d Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1640, 161 L.Ed.2d 477 (2005).

As previously stated, Plaintiff has failed to plead violations of the First, Fourth, Fifth, and Fourteenth Amendments, the New York Constitution, or a claim for defamation. Thus, as to these claims, the motion for dismissal of the claim for damages under 42 U.S.C. § 1983 is granted. Plaintiff does, however, state a cause of action for violation of New York Public Health Law § 2504. Nonetheless, the Eleventh Amendment prevents the School Board and Kassebaum and Hankin (acting in their official capacities) from being sued for damages under 42 U.S.C. § 1983. The Eleventh Amendment would not bar a suit for damages for example against Kassebaum and Hankin, individually, however, all of the actions that are the subject of the complaint were performed by Kassebaum and Hankin in their official capacities.

Thus, the Eleventh Amendment bars a suit for damages under 42 U.S.C. § 1983 against Kassebaum and Hankin for violation of New York Public Health Law § 2504. The Eleventh Amendment does not bar a suit for liability under 42 U.S.C. § 1983, and thus the claim under New York Public Health Law § 2504 survives as to liability only. The motion to dismiss the claim for damages under 42 U.S.C. § 1983 is granted as to all other claims.

IX. *Qualified Immunity*

 Defendants argue that even if their actions violated Plaintiff's Constitutional or State law rights, Defendants are protected from liability by qualified immunity. The doctrine of qualified immunity shields school officials from liability for damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "A right is considered to be 'clearly established' if the 'contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2d Cir.1998) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

An analysis of whether Defendants Kassebaum and Hankin are entitled to qualified immunity for the First, Fourth, Fifth, Fourteenth Amendment, New York State Constitution, and defamation claims is unnecessary, as the motion for dismissal of these claims is granted.

The only remaining question is whether Kassebaum and Hankin are entitled to qualified immunity as to the New York Public Health Law § 2504 claim. As previously stated, Plaintiff states a cause of action for violation of § 2504. The issue turns on whether Plaintiff's right to be free from psychological testing without his parents' consent is a clearly established statutory right. The contours of that right do not appear to be sufficiently clear. A reasonable official could fail to understand that subjecting Plaintiff to psychological testing without his parents' consent violates Plaintiff's statutory right. Defendants stated that the psychological testing was meant to determine Plaintiff's "psychological state." Such testing technically falls under the statutory definition of health services, as a "procedure designed to determine health status." 8 NYCRR § 136.1(d) (2005). It is doubtful, however, that reasonable school officials are aware that psychological testing technically falls under the statutory definition of health services, as it appears in 8 NYCRR § 136.1(d) (2005). Thus, Defendants Kassebaum and Hankin are entitled to qualified immunity for violation of Plaintiff's right under § 2504, as this is not a clearly defined right of which a reasonable person would have known.

Finally, a comment in line with the Supreme Court's statements in *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 685, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). This Court should not be a haven for complaints by students and their parents against actions taken by school officials in their extremely difficult task of educating and controlling the irresponsible behavior of their students. As is often the case, as it is here, these types of conflicts are better handled within the educational system and not in the federal trial and appellate courts.

**Conclusion**

For the foregoing reasons, the motion for dismissal is **GRANTED** as to all claims.

SO ORDERED.